[No. 23241-0-I.   Division One.   June 4, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. CARL LLOYD GOULD, *Appellant*.

*Patricia Novotny* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Craig Peterson, Deputy,* for respondent.

BAKER, J.—Carl Gould appeals his conviction for first degree robbery. He contends the court erred by (1) admitting untimely evidence identifying his stepbrother as the individual seen with him shortly after the crime, and (2) denying his request for continuance in order to research the issues raised by the identification evidence. In a pro se brief, Gould argues several other errors were made at trial. We affirm.

## I
### FACTS

The robbery occurred as follows: A clerk at an Auburn pharmacy observed a man enter the store. The pharmacist was filling prescriptions when the man, whom he later identified as Gould, stepped behind the prescription counter. The man pointed a knife at the pharmacist and asked where he could find the drugs. He then pulled some bottles from an open shelf and asked where the Demerol was located. The pharmacist opened a locked cabinet and the robber filled his arms and pockets with narcotics, including Demerol and Percodan. As the robber fled the store, the clerk noticed him holding his jacket and heard the jiggling of pills in bottles.

Outside, William Schreiner and a friend were standing a half block from the pharmacy when they saw two men—one short, identified by Schreiner at trial as Gould, and the other tall and blond—come from the general area of the pharmacy and run behind a church. They watched as the taller man scaled a chain link fence and as Gould handed across what looked like a white container and sounded like coins inside a jar. Believing the two had broken into the church and stolen money, Schreiner yelled for Gould and his companion to stop. When they did not, Schreiner and his friend got in their trucks and gave chase.

Eventually they cornered the two as they attempted to jump a second fence. Schreiner made Gould empty his pockets which yielded only pill bottles and a syringe vial. When they did not find the jar of money as expected,

Schreiner and his friend let Gould and the taller man go. The pair ran off in the direction of a nearby park leaving behind a large jar of Percodan on the other side of the fence.

Schreiner returned the Percodan to the pharmacy. There, he encountered a police officer and told him what had just occurred. He then accompanied the officer to the park. By the time they arrived, Gould had been apprehended by a K–9 officer. Drugs were found both in his jacket and in the brush alongside the trail where he had been spotted running through the park. Gould was taken back to the pharmacy, where both the pharmacist and the clerk identified him as the person who had robbed the store. Meanwhile, Schreiner retraced Gould's path and located a knife next to the chain link fence alongside the church.

At trial Gould testified that he went alone to the park and drank a few beers. He then saw two men, one of whom was tall and blond and the other short and dark, running down a trail. The shorter man offered to trade Gould six Percodan for his shirt and shoes. Gould claimed that he agreed, whereupon the switch was made and the men ran off. Gould put on the jacket abandoned by the shorter man, then ingested the Percodan and tried to follow the men. When he saw the police and noticed there were more pills left in the jacket, he threw them away. Shortly thereafter, he was apprehended.

## II
### PROCEDURAL HISTORY

At the end of the first trial day, the State concluded its direct examination of William Schreiner. That evening, after having heard Schreiner's testimony, an Auburn police detective obtained a photograph of Gould's stepbrother, Tom Smither. The detective then showed the photo to Schreiner who identified the person pictured as the man he had seen with Gould the night of the crime.

The following morning, the State informed Gould of this development. The State then moved to reopen Schreiner's

direct examination to present new evidence. The court denied the State's motion on the ground that the new information was not timely presented, and was therefore unfairly prejudicial to the defendant. However, the court did not suppress the evidence as Gould had requested, preferring instead to reserve judgment on its possible admissibility through some other witness.

Gould then cross–examined Schreiner on, among other things, the description he had given the police of the taller of the two men. When Gould had completed his questioning of Schreiner, the State moved at side bar for permission to redirect on the subject of the taller man's identification. Again, the State sought to introduce the photograph of Smither through Schreiner and to elicit from him an identification of the man pictured as the person he had seen with Gould. This time, the motion was granted.

The court explained that its change in ruling was motivated by Gould's own actions. By educing substantial testimony concerning the physical description of the other individual involved, Gould had opened the door for the State to present evidence on redirect which the court had not allowed it to present through its motion to reopen. The photograph was admitted into evidence and Schreiner testified that the man pictured was the one who had been with Gould. The State then informed the court it intended to have Detective Burris identify the photograph as that of defendant's stepbrother, Smither. Asked by the court why this information had not been made known earlier, the State explained that the police had not made the connection between Schreiner's identification and Smither until a few days before trial and that Detective Burris had not spoken with Schreiner until the evening of his direct testimony.

Gould moved for a continuance to brief the issue, or in the alternative, for a mistrial. The court at first granted the continuance; then, after the noon recess, Gould indicated he needed more time to research the issues. The court

inquired as to what prejudice Gould would suffer were trial to go forward at that time. Gould indicated that any evidence concerning his relationship to the other suspect in the case would be very damaging and would compel a change in trial strategy to his disadvantage. Unpersuaded, and not wanting to carry the trial over the weekend, the court reconsidered its earlier ruling and denied the continuance. The court, however, invited Gould to renew his motion for mistrial upon a showing of appropriate authority. The motion was not renewed.

Detective Burris then testified he recognized the individual in the photograph as Gould's stepbrother. The jury found Gould guilty of first degree robbery and returned a special verdict that he was armed with a deadly weapon. This appeal followed.

## III
## ER 403

Conceding the issue of relevance, Gould contends that the photograph and identification of his stepbrother were unfairly prejudicial, and as such, their exclusion was required under ER 403. Gould maintains that the photograph and related testimony was surprise evidence amounting to trial by ambush. He argues that because of its late presentation he was left unprepared to test, rebut, or explain away the evidence. Additionally, he argues that the evidence raised an impermissible inference and may have served as an improper basis for the jury's determination of guilt.

Under ER 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Coe,* 101 Wn.2d 772, 782, 684 P.2d 668 (1984). Because of the court's considerable discretion in administering this rule, reversible error is found only in the exceptional circumstance of a manifest abuse of discretion. *State v. Gatalski,* 40 Wn. App. 601, 610, 699 P.2d 804, *review denied,* 104 Wn.2d 1019 (1985).

■ Surprise, standing alone, is not recognized as a ground for exclusion of evidence under ER 403.[1] 1 J. Weinstein & M. Berger, *Evidence* ¶ 403[01], at 403–20 (1985); 5 K. Tegland, Wash. Prac., *Evidence* § 106, at 361 (3d ed. 1989). The comment to ER 403 states, in relevant part:

> The rule does not specify surprise as a ground of exclusion, following Wigmore's view of the common law. 6 Wigmore § 1849. The advisory committee note to Federal Rule 403 observes that claims of unfair surprise may still be justified in some cases despite procedural requirements of notice and the availability of discovery, but that the granting of a continuance is a more appropriate remedy than exclusion of the evidence.

Gould contends that the trial court committed error by denying his motion for continuance. Gould argues he was prepared to defend against the eyewitness testimony that it was he who took drugs from the pharmacy at knife point, but had not prepared himself to meet the charge that the other individual seen fleeing the area of the crime with him was his stepbrother. He claims that without a reasonable opportunity to investigate and research the matter, he was denied his right to a fair trial.

Gould relies on *State v. Oughton,* 26 Wn. App. 74, 612 P.2d 812 (1980) as support for his contention that the trial court abused its discretion in denying his motion for continuance. In *Oughton,* the prosecutor obtained additional information from a witness on the morning of the third day of trial. The prosecutor told neither defense counsel nor the trial judge of the information, but questioned the witness about it while he was on the stand. The trial court overruled a relevancy objection and also refused to permit a continuance. This court held that was reversible error.

> This court has declared that "promptly" in CrR 4.7(h)(2) means at the moment of discovery or confirmation, even when that occurs during trial. The prosecuting attorney elected to

---

[1]We note also exclusion of previously undisclosed evidence has been expressly rejected as a sanction for failure to comply with the criminal rules on discovery. CrR 4.7(h)(7)(i); *State v. Stamm,* 16 Wn. App. 603, 610, 559 P.2d 1 (1976), *review denied,* 91 Wn.2d 1013 (1977).

keep this information from defense counsel and from the trial judge until [the witness] revealed it on the stand. This tactic not only falls within conduct barred by CrR 4.7(h)(2), it also runs contrary to the principles behind broad criminal discovery accepted in this state. . . .

. . . .

. . . if actual prejudice to the defendant is shown because of the denial of a continuance, reversible error has occurred.

(Citations omitted.) *State v. Oughton, supra* at 79.

*Oughton* is distinguishable. Here, the record shows the State informed both the court and Gould of the new evidence on the morning after it was discovered. The trial court did not allow admission of the evidence until after Gould himself opened the door on cross examination. When asked what prejudice would result from denial of the continuance, Gould stated that if the jury heard that the second man was his stepbrother it could be "very damaging". However, he made no showing that if the trial were postponed he could procure evidence to controvert the testimony at issue.

Furthermore, Gould has failed to show that the likely outcome of the trial would have been different had his motion been granted. *State v. Eller,* 84 Wn.2d 90, 95, 524 P.2d 242 (1974). Indeed, no specific claim of prejudice by reason of the lack of a continuance has ever been raised by Gould, even by posttrial motion or, for that matter, on appeal. We decline to assume unfair prejudice from the trial court's ruling. "[R]efusal of a delay requested on the ground of surprise will generally be approved, in the absence of a showing that the accused was prejudiced by the denial of additional time." 17 Am. Jur. 2d *Continuance* § 42, at 169 (1964).

Where the grant of a continuance might not provide adequate relief because unfair prejudice would nonetheless result, ER 403 requires the trial court to weigh that risk in deciding whether the evidence should be admitted. 1 J. Weinstein & M. Berger, *Evidence* ¶ 403[01], at 403–20 to 403–21 (1985); *see Lockwood v. AC&S, Inc.,* 44 Wn. App. 330, 363, 722 P.2d 826 (1986), *aff'd,* 109 Wn.2d 235, 744

P.2d 605 (1987). "[U]nfair prejudice" is that which is more likely to arouse an emotional response than a rational decision by the jury. *State v. Rice,* 48 Wn. App. 7, 737 P.2d 726 (1987); 5 K. Tegland, Wash. Prac., *Evidence* § 106, at 349 (3d ed. 1989). It requires more than testimony which is simply adverse to the opposing party. 1 J. Weinstein & M. Berger, *Evidence* ¶ 403[03], at 403-29 (1985). In our opinion the trial court correctly ruled that unfair prejudice was not present.

Gould claims the admission of the photograph and its identification was prejudicial because it allowed the jury to impute his stepbrother's association with the crime to him. To the contrary, we believe any adverse inference drawn from this evidence was permissible. Where, as here, the defense is mistaken identification, virtually all evidence tending to prove or disprove the identity of the crime's perpetrator is probative. While the evidence was prejudicial in the sense that it was offered to persuade the trier of fact to arrive at one conclusion and not another, it was not unfairly prejudicial within the meaning of ER 403. The nature of the evidence was neither unduly inflammatory nor likely to prevent the jury from making a rational decision.

Were this evidence the only identification component of the State's case against Gould, his argument would be more persuasive. However, in light of the other highly persuasive eyewitness and circumstantial evidence presented, the evidence at issue was not unfairly prejudicial. Gould was identified as the robber by the pharmacist and the clerk. Schreiner identified him as the man he had seen fleeing the area of the crime and stopped shortly thereafter. The police found containers of pills similar to those taken both near the trail along which he ran and on his person when he was apprehended. The overwhelming evidence of guilt satisfies this court that the jury verdict was not affected by the denial of the motion for continuance. Therefore, Gould's reliance upon ER 403 to exclude the evidence is unfounded

and his claim of surprise is insufficient to invoke the protection of the rule.

██ Gould also assigns error to the trial court's failure to balance on the record the prejudicial and probative value of the photograph and its identification. The cases cited by Gould all involve interpretation of ER 404(b) (*State v. Jackson*, 102 Wn.2d 689, 689 P.2d 76 (1984); *State v. Saltarelli*, 98 Wn.2d 358, 655 P.2d 697 (1982); *State v. Tharp*, 96 Wn.2d 591, 637 P.2d 961 (1981); *State v. Barringer*, 32 Wn. App. 882, 650 P.2d 1129 (1982)). These cases are inapplicable. *Tharp* and its progeny have established that in cases involving the admission of evidence of prior misconduct, the absence of a record precludes effective appellate review.[2] The same rule applies in cases arising under ER 609 involving evidence of prior convictions. *See State v. Jones*, 101 Wn.2d 113, 677 P.2d 131 (1984). However, Gould cites no authority for the proposition, and we know of none, that a balancing on the record is required outside of the ER 404(b) and 609 contexts. We are unwilling to extend the balancing requirement to evidentiary objections and claims of error based upon ER 403 alone. Such a rule would unnecessarily and unreasonably intrude upon the trial court's management of the trial process.

## IV
### IN–COURT IDENTIFICATION

In a pro se brief, Gould contends the trial court erred when it allowed Schreiner to identify him in court as one of the persons seen fleeing the area of the pharmacy. He claims the in–court identification was tainted because Schreiner had viewed him while in custody shortly after he was apprehended.

██ *State v. McDonald*, 40 Wn. App. 743, 700 P.2d 327 (1985), cited by Gould, is not authority for this argument.

---

[2]However, appellate courts should determine ER 404(b) admissibility issues where the record as a whole permits, even without the aid of an articulated balancing process by the trial court. *State v. Gogolin*, 45 Wn. App. 640, 727 P.2d 683 (1986).

In *McDonald,* an impermissibly suggestive statement was made by a police officer to the victim that one of the defendants, whom the victim failed to identify in a lineup, was a suspect. The victim later saw the defendant taken into the courtroom in handcuffs by police officers. The *McDonald* court held that, considering the totality of the circumstances, the later in–court identification was not reliable, and the substantial likelihood of misidentification required reversal. In the present case, however, Schreiner's in–court identification of Gould was based on his observations at the time of the robbery and nothing in the record indicates that identification was influenced by the impromptu show up at the park or by any suggestive comments made by the police. Moreover, a showup is not per se impermissibly suggestive. *State v. Gusman–Cuellar,* 47 Wn. App. 326, 335, 734 P.2d 966, *review denied,* 108 Wn.2d 1027 (1987). The defendant bears the burden of proving a showup identification procedure was unnecessarily suggestive. *Guzman–Cuellar,* at 335. Gould has failed to make such a showing. We hold there was no error in permitting Schreiner to identify Gould in court.

In a related argument, Gould contends that the trial court committed error by failing to hold a CrR 3.6 hearing on the issue of Schreiner's identification. He also argues that there was violation of CrR 4.7(a)(1)(i) because the State did not inform him of the substance of Schreiner's testimony before trial.

■ There is no indication anywhere in the record that a request for a CrR 3.6 hearing was ever made on the issue of Schreiner's identification. Gould maintains this is so because he was kept ignorant of the substance of Schreiner's testimony. However, a trial court is not required to anticipate an issue on behalf of the defense. The burden is upon the defendant to request a suppression hearing. In the absence of a request, there is no error.

■ Moreover, there is no indication that Gould objected contemporaneously to the admission of his in–court identification by Schreiner or to the testimony that Schreiner

had seen him in custody at the park. While Gould claims the State's actions violated his right to due process of law, this is not an issue which rises to a level of constitutional magnitude. We do not believe there exists any "reasonable probability" that the result of the trial would have been different had the evidence at issue been omitted. Therefore, failure by Gould to raise an objection before the trial court regarding the State's alleged nonfeasance foreclosed his right to urge the issue for the first time on appeal. *State v. Thetford,* 109 Wn.2d 392, 397, 745 P.2d 496 (1987); *State v. Manthie,* 39 Wn. App. 815, 825, 696 P.2d 33, *review denied,* 103 Wn.2d 1042 (1985). The trial court must have an opportunity to reflect and rule upon any claimed nonconstitutional error before this court will consider it on review. *Smith v. Shannon,* 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

Finally, Gould contends that the court abused its discretion when it changed its ruling to admit the photograph based on his cross examination of Schreiner. He argues that the trial court's reasoning is untenable because his questioning of Schreiner comported with ER 611, which provides that cross examination should be limited to the subject matter of direct examination.

█ The issue raised is whether the State's redirect was proper considering the nature of Gould's cross examination. The basic purpose of redirect examination "is to clarify matters which may tend to be confused by cross–examination and to rehabilitate the witness before the trier of fact". *State v. Baker,* 4 Wn. App. 121, 128, 480 P.2d 778 (1971). Whether redirect examination is within the scope of cross examination is a decision within the trial court's discretion. *State v. Mitchell,* 56 Wn. App. 610, 615, 784 P.2d 568 (1990).

The State on direct examination elicited a simple description of the person seen with Gould on the evening in question. Gould arguably expanded the scope of that inquiry when, in an effort to challenge Schreiner's credibility, he raised issues regarding Schreiner's opportunity to observe the suspects at all times, the accuracy of his

description, and the lapse of time between observation and providing his description to the police. This, the trial court ruled, opened the door for the State on redirect to introduce the photograph of Gould's stepbrother.

While the cross examination of Schreiner did not fully support Gould's theory of misidentification, it did furnish a basis from which he might have argued before the jury that Schreiner's description and identification were as susceptible to error as those of the pharmacist and clerk. Under these circumstances we are unwilling to hold the trial court abused its discretion. Admission of the photograph and related testimony was not error.

Affirmed.

SCHOLFIELD and FORREST, JJ., concur.