FILED
COURT OF APPEALS
DIVISION II

2015 FEB 18 AM 9: 19

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44445-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JEFFREY A. THOMAS, | |
| Appellant. | |

BJORGEN, A.C.J. — A jury found Jeffrey Thomas guilty of theft of a motor vehicle and theft in the third degree. Thomas appeals, claiming that the trial court erred by (1) allowing the parties to exercise peremptory challenges to jurors on paper in violation of his right to a public trial, (2) admitting an unfairly prejudicial statement, (3) sentencing him by using an improperly calculated offender score, and (4) imposing legal-financial obligations (LFOs). Thomas also filed a statement of additional grounds (SAG) challenging the sufficiency of the State's evidence. We affirm Thomas's convictions, although we remand for a full evidentiary hearing on his offender

score in light of our Supreme Court's recent decision in *State v. Jones*, ___ Wn.2d ___, 338 P.3d 278 (2014).

## FACTS

In June 2012, Thomas walked into Gilchrist Buick-GMC, a Tacoma car dealership, asked to see a car, took the keys from the salesman, and then drove the car off the lot. The next day, Thomas filled the stolen car's gas tank at a Tacoma gas station. When the station's owner attempted to collect, Thomas informed her that he could not pay because he had forgotten his wallet. When the owner attempted to work out payment with Thomas, Thomas offered various stories, claiming that he was a Gilchrist employee and that he had just purchased the car. The station's owner ordered an employee to call Gilchrist to verify Thomas's stories. The employee discovered that the car was stolen and reported this to the station owner. The owner then called 911, as Thomas drove off, to report the gas theft and the location of the stolen vehicle.

Police units responded and found Thomas and the stolen car in a nearby parking lot. After a short chase, Thomas stopped the car and police arrested him. The salesman who helped Thomas at Gilchrist came to the scene, retrieved the car, and identified Thomas as the man who had stolen the car. Employees of the gas station also came to the scene and told police that Thomas had stolen gas from their station. As police placed Thomas under arrest, they read him the *Miranda* warnings.[1] Thomas then spoke with one of the officers about the incident, telling the officer that he (Thomas) was "Jesus Christ." Verbatim Report of Proceedings (VRP) at 355, 357.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Before Thomas's trial, the trial court held a hearing pursuant to CrR 3.5 to determine the admissibility of the statements Thomas made after his arrest. During this hearing, one of the arresting officers testified that he had ceased interrogation after Thomas stated that he was Jesus Christ, believing further questioning would be pointless. The officer also testified that Thomas's statement triggered memories of similar statements by an individual who had recently killed four police officers in nearby Lakewood, and that the Lakewood shooter's statements and actions were widely known in the community.

The State argued that Thomas's statement was admissible to show why police had ended their interrogation and to rebut any claims that police had investigated the matter deficiently. Thomas, in contrast, objected to the admission of his statement because of the possibility that it would prejudice the jury given its similarity to the Lakewood shooter's statements. The trial court admitted the statement, but forbad the officer from testifying about how Thomas's statement reminded him of the Lakewood shootings.

The parties conducted voir dire in open court. At the end of voir dire, the trial court allowed the parties to exercise peremptory challenges to potential jurors by writing the names of jurors they wished to strike on a piece of paper. When the parties finished, the court, on the record, seated the venire members selected for the jury. No evidence suggests that the trial court considered the *State v. Bone-Club* factors before allowing the parties to exercise peremptory challenges. 128 Wn.2d 254, 906 P.2d 325 (1995).

During its case, the State presented witnesses who identified Thomas as the man who stole both the car and the gas. Officers also testified about arresting Thomas at the end of the

3

chase with the stolen car. After trial, the jury found Thomas guilty of theft of a motor vehicle and theft in the third degree.[2]

At the sentencing hearing, Thomas declined to stipulate to his criminal history and his attorney stated that "it's up to the Court and the State to determine [Thomas's] offender score." VRP at 428. The State offered a summary of Thomas's criminal convictions and certified copies of judgments and sentences entered against Thomas for felony convictions in 1992, 1993, 1994, 1999, and 2001. The State's summary of Thomas's criminal history also showed felony convictions in 2006 and 2009, but the State introduced no other evidence to prove the existence of these convictions. The judgment and sentence entered against Thomas at sentencing included the 2006 and 2009 felony convictions in his criminal history. Based on the offender score calculated using that criminal history, the sentencing court imposed a standard range term of confinement of 57 months.

The sentencing court also imposed discretionary LFOs, based on a finding in Thomas's judgment and sentence that he had a current or future ability to pay LFOs. The court ordered Thomas to pay $200 for court costs and $500 in recoupment fees for work performed by the Pierce County Department of Assigned Counsel.[3] Thomas did not object to the imposition of LFOs, although his attorney did ask the trial court not to impose "a higher" recoupment fee based on his likely sentence and current indigence. VRP at 428.

---

[2] After sentencing for the theft of a motor vehicle and third degree theft convictions, the State moved to vacate the third degree theft conviction and dismiss the charge with prejudice because "[f]urther incarceration and/or bench supervision" on the count "would . . . not [be] in the interest of justice" given the lengthy sentence on the theft of a motor vehicle count. Clerk's Papers (CP) at 95-96. The court granted this motion.

[3] The trial court reduced the recoupment fee for assigned counsel based on its consideration of Thomas's ability to pay and entered an order of indigency at sentencing.

No. 44445-3-II

Thomas now appeals.

## ANALYSIS

### I. PUBLIC TRIAL

Thomas first contends that the trial court impermissibly closed the courtroom during voir dire by allowing the parties to exercise peremptory challenges in writing without first considering the factors set forth in *Bone-Club*, 128 Wn.2d 254.

We recently rejected a nearly identical challenge in *State v. Marks*, ___ Wn. App. ___, 339 P.3d 196, 198-200 (2014). Our analysis in *Marks* rested on our decisions in *State v. Dunn*, 180 Wn. App. 570, 575, 321 P.3d 1283 (2014), *review denied*, ___ P.3d ___ (2015); *State v. Love*, 176 Wn. App. 911, 917-20, 309 P.3d 1209 (2013), *review granted in part*, ___ P.3d ___ (2015); and *State v. Wilson*, 174 Wn. App. 328, 338-40, 298 P.3d 148 (2013). Following *Marks*, we hold that the trial court's use of written peremptory challenges did not implicate the public trial right.

### II. ADMISSION OF EVIDENCE

Thomas next contends that the trial court erred in admitting his statement that he was "Jesus Christ." Br. of Appellant at 13-14. Specifically, Thomas claims that the admission of the statement unfairly prejudiced him in front of the jury given its similarity to statements made by the Lakewood shooter, whose statements and criminal acts were widely known in the community.[4] We review a trial court's evidentiary rulings for an abuse of discretion. *State v.*

___

[4] On appeal, Thomas also argues that the trial court should have excluded the statement as irrelevant. Although Thomas argued in the trial court that the statement was prejudicial, he did not argue that it was irrelevant. A party may not argue on appeal that evidence was improperly admitted based on a different ground than the one presented to the trial court. *State v. Price*, 126 Wn. App. 617, 637, 109 P.3d 27 (2005). We therefore decline to reach Thomas's relevancy argument. Even if we did consider this argument, however, Thomas's relevancy challenge is evidentiary, not constitutional, and the harmless error analysis below would apply.

5

*Aguilar*, 153 Wn. App. 265, 273, 223 P.3d 1158 (2009). We assume, without deciding, that the trial court abused its discretion by admitting the statement, but deny Thomas's request for relief because he cannot make the necessary showing of prejudice.

ER 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Evidence is unfairly prejudicial where it "'is more likely to arouse an emotional response than a rational decision by the jury.'" *State v. Cronin*, 142 Wn.2d 568, 584, 14 P.3d 752 (2000) (quoting *State v. Gould*, 58 Wn. App. 175, 183, 791 P.2d 569 (1990)). Relevant evidence is presumptively admissible, and the party seeking exclusion bears the "burden of showing prejudice." *Carson v. Fine*, 123 Wn.2d 206, 225, 867 P.2d 610 (1994).

Even if we assume, without deciding, that the trial court abused its discretion in admitting the testimony about Thomas's statement, Thomas must show that the error prejudiced him in order to obtain relief. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). Since Thomas bases his claim of error on the violation of an evidentiary rule, rather than a constitutional right, we apply the rule that "'error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'" *Bourgeois*, 133 Wn.2d at 403 (quoting *State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981)).

If the jury had not heard Thomas's statement, it would have still heard overwhelming evidence of his guilt. A car salesman testified that he recognized Thomas as the man who stole the car. Three witnesses from the gas station testified that Thomas was the man who stole gas from their station. Several police officers testified to chasing the stolen vehicle immediately after the gas theft, a chase that ended with Thomas's arrest. Given this evidence, which Thomas

did not controvert, we cannot say that there is a reasonable probability the jury would have acquitted Thomas if it had not heard his statement. Therefore, a new trial is not warranted. *Bourgeois*, 133 Wn.2d at 403 ("[t]he improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole.").

### III. OFFENDER SCORE

Thomas next argues that the trial court sentenced him using an erroneous offender score. Specifically, Thomas contends that the State failed to present any evidence to prove the existence of the two most recent offenses listed in the criminal history on his judgment and sentence. Thomas claims that, because he put the State and the trial court on notice of the State's need to prove his criminal history, the State's failure to prove his 2006 and 2009 convictions requires resentencing based on the record before the original sentencing court. The State appears to concede that it failed to present competent evidence of these convictions, but argues that we should remand the matter to the trial court for a full evidentiary hearing to allow it to present evidence of all Thomas's criminal convictions. We accept the State's concession and remand for a full evidentiary hearing in light of our Supreme Court's recent decision in *Jones*, 338 P.3d at 282.

The Sentencing Reform Act of 1981, chapter 9.94A RCW, sets an offender's default sentence based on two factors: his or her offender score and the seriousness of the offense. RCW 9.94A.510. The trial court calculates an offender score by assigning points to the offender's prior or current convictions, subject to certain adjustments to that scoring. RCW 9.94A.525, .589(1)(a).

"The State bears the burden of proving the existence of prior convictions" used to calculate the offender score "by a preponderance of the evidence." *State v. Bergstrom*, 162 Wn.2d 87, 93, 169 P.3d 816 (2007). "The best evidence" for discharging this burden of proof "is a certified copy of the [judgment]." *State v Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999). Alternatively, the State may use "other comparable documents of record or transcripts of prior proceedings" to establish the existence of prior offense. *Ford*, 137 Wn.2d at 480. A prosecutor's unsupported criminal history summary, however, is not the type of comparable document that can establish the existence of a prior conviction. *State v. Hunley*, 175 Wn.2d 901, 915, 287 P.3d 584 (2012). Consequently, any sentence imposed using an offender score based only on a prosecutor's criminal history summary violates due process. *Hunley*, 175 Wn.2d at 915.

As noted, the State appears to concede that it failed to present competent evidence of the 2006 and 2009 convictions, limiting its argument to whether it may present evidence on remand for resentencing. We accept the State's concession. The trial court sentenced Thomas using an offender score that included felony convictions in 2006 and 2009. The prosecutor offered no certified copies of the judgment and sentence for these convictions, nor did he offer any documents comparable to a certified copy of the judgment and sentence, such as certified transcripts or other documents of record. Instead, the record contains only the prosecutor's summary of Thomas's criminal history and, as noted, this summary was not sufficient to satisfy the State's burden of proof. *Hunley*, 175 Wn.2d at 915. Because the trial court calculated Thomas's sentence using offenses for which the State failed to satisfy its burden of proof, it erred and a remand for reconsideration of the offender score is necessary. *Hunley*, 175 Wn.2d at 915-16.

8

In *Jones*, 338 P.3d at 282-83, our Supreme Court upheld that part of the 2008 legislation that amended RCW 9.94A.530(2) to read,

> On remand for resentencing following appeal or collateral attack, the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented.

LAWS OF 2008, ch. 231, § 4. Consistently with *Jones*, we remand for a full evidentiary hearing on whether the 2006 or 2009 convictions are adequately proven to be included in the offender score, at which hearing the parties may present all relevant evidence of Thomas's criminal history, including that not previously presented. If the sentencing court determines that either the 2006 or the 2009 conviction is not adequately proven, it shall also determine whether any prior convictions may no longer be used to calculate the offender score under the "washing out" provisions of RCW 9.94A.525(2).

## IV. LFOs

Thomas next challenges the trial court's imposition of LFOs, making a two-fold argument. First, he contends that the trial court's finding that he had the present or future ability to pay LFOs was clearly erroneous. Second, Thomas argues that the order imposing LFOs should be stricken because of the error in finding that he had the ability to pay them. The State argues that Thomas failed to preserve his challenge to the finding about his ability to pay and that the order requiring him to pay LFOs is not yet ripe for review. We agree with the State.

A trial court may order a convicted person to pay LFOs and costs. RCW 9.94A.760; RCW 10.01.160. However, the trial court may not order the payment of costs unless the defendant "is or will be able to pay them." RCW 10.01.160(3).

Thomas contends, for the first time on appeal, that the trial court erred in finding he had a present or future ability to pay LFOs. Generally we will not consider claims of error raised for

9

the first time on appeal, although we may consider claims of a manifest constitutional error not raised in the trial court. RAP 2.5(a)(3).[5] The requirement that a sentencing court consider the defendant's financial ability to pay before imposing LFOs is a statutory requirement, not a constitutional one. *State v. Calvin*, 176 Wn. App. 1, 302 P.3d 509 (2013) (citing *State v. Blank*, 131 Wn.2d 230, 241-42, 930 P.2d 1213 (1997)), *amended on reconsideration*, 316 P.3d 496 (2013). Consequently, each division of our court has declined to address for the first time on appeal challenges to a finding that the defendant could pay LFOs. *State v. Duncan*, 180 Wn. App. 245, 249-55, 327 P.3d 699 (2014); *Calvin*, 302 P.3d at 507-08; *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *review granted*, 178 Wn.2d 1010 (2013); RAP 2.5(a).

Thomas did not object to the finding that he had the present or future ability to pay LFOs at trial.[6] By failing to raise his objection in the trial court, Thomas waived it and may not raise it for the first time on appeal. *Duncan*, 180 Wn. App. at 249-55; *Calvin*, 302 P.3d at 507-08; *Blazina*, 174 Wn. App. at 911; RAP 2.5(a).

Thomas also challenges the order imposing LFOs itself, arguing that the trial court erred in entering the order because it never properly found that he could pay them. While there is no constitutional requirement that the trial court consider the defendant's ability to pay LFOs at the time it imposes them, the constitution does require consideration of the defendant's ability to pay before the State attempts to enforce payment. *E.g.*, *Blank*, 131 Wn.2d at 241-42 (analyzing the

---

[5] Though not relevant here, we will also entertain, for the first time on appeal, claims that the trial court lacked jurisdiction or that a party failed to establish facts upon which relief may be granted. RAP 2.5(a)(1), (2).

[6] Thomas's attorney did state, at sentencing, that "I would ask to consider not imposing a higher DAC [Department of Assigned Counsel] recoupment. Mr. Thomas is going to be in prison for a substantial period of time anyway. He's been found to be indigent." VRP at 428. This request is not an objection to the finding that he had the present or future ability to pay the charges at issue.

appellate recoupment statute). Therefore, "the meaningful time to examine the defendant's ability to pay is when the government seeks to collect the obligation," *State v. Baldwin*, 63 Wn. App. 303, 310, 818 P.2d 1116 (1991), because "'[i]t is at the point of enforced collection . . . where an indigent defendant . . . may assert a constitutional objection on the ground of his indigency.'" *State v. Curry*, 118 Wn.2d 911, 917, 829 P.2d 166 (1992) (quoting *State v. Curry*, 62 Wn. App. 676, 681-82, 814 P.2d 1252 (1991)). Only when the State attempts to enforce the order to pay LFOs will Thomas be able to claim that the constitution forbids the State from collecting on the obligation. *Curry*, 118 Wn.2d at 917 n.3; *State v. Lundy*, 176 Wn. App. 96, 108-09, 308 P.3d 755 (2013).

No evidence indicates that the State has attempted to collect from Thomas, meaning that Thomas's claim is not yet ripe for review. *Curry*, 118 Wn.2d at 917 n.3; *Lundy*, 176 Wn. App. at 108-09. We decline to review it.

## V. SAG ARGUMENTS

Thomas raises three additional grounds for relief in his SAG. First, he contends that he did not commit theft of a motor vehicle because he rented, rather than stole, the car. Second, he contends that officers committed perjury by lying about anti-theft devices on the car, and the failure to engage this device shows that the car was not stolen. Third, Thomas contends that the police did not properly investigate his offense because they did not respond to the dealership until approximately 15 hours after the theft. We reject each of Thomas's arguments.

Each of Thomas's claims appear to challenge the sufficiency of the State's evidence. Multiple witnesses, however, identified Thomas as the car thief and gas thief at trial. Given this testimony, a rational trier of fact could have found that the State proved he committed all the elements of the charged offenses beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537,

551, 238 P.3d 470 (2011) (standard of review for a sufficiency challenge). Under this standard, the evidence was sufficient to sustain Thomas's convictions.

CONCLUSION

We affirm Thomas's convictions, although we remand for a full evidentiary hearing on his offender score in light of our Supreme Court's recent decision in *Jones*, 338 P.3d 278.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
BJORGEN, A.C.J.

We concur:

_____
MAXA, J.

_____
MELNICK, J.

12