FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 MAR -5 AM 8: 26

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

STATE OF WASHINGTON, )
                        )    DIVISION ONE
        Respondent, )
                        )    No. 76043-2-I
      v. )
                        )
JOEL LEVEL HARRIS, )
                        )    UNPUBLISHED OPINION
        Appellant. )
                        )    FILED: March 5, 2018
                        )

DWYER, J. — Joel Harris appeals from the judgment entered on a jury's verdict finding him guilty of one count of misdemeanor violation of a court order with a special finding of domestic violence. On appeal, Harris contends that the trial court erred by denying his pretrial motion to exclude any evidence of Jasslyn Washington's pregnancy.

We conclude that the trial court did not abuse its discretion by ruling that the State could introduce limited evidence of Washington's pregnancy on the basis that Harris's alleged assault of Washington was material to establishing the assaultive conduct underlying its charge of domestic violence felony violation of a court order. Accordingly, we affirm.

I

In June 2016, a domestic violence no-contact order was issued barring Harris from having contact with, or coming within 500 feet of, Washington. At that time, Washington and Harris had a child in common and Washington was pregnant with another child believed to be Harris's.

Three days after the no-contact order issued, a pair of 911 calls were made in quick succession. The first caller stated that a man "just hit . . . my friend. She's pregnant," and then abruptly ended the call.

The second caller stated that she was "reporting an assault" and acknowledged that one of her friends had just dialed 911. The second caller said that she was the one who had been assaulted and, additionally, that she was pregnant. She requested that a police officer be sent to the scene and, after she stated that she was between four and six months pregnant, the 911 operator also dispatched fire department medical personnel to the scene.

Law enforcement officers arrived at the scene and encountered two women, later identified as Washington and Special Cummings. Washington told the officers that she and Cummings had voluntarily picked up Harris in her car. Washington stated that, while in the car, Harris became angry at her because she had laughed at his accusation that she had been unfaithful to him. Washington said that Harris slapped her on the side of her face and punched her in her head and lower body, including her stomach area. Washington reported that Harris fled the scene once Cummings dialed 911.

Cummings told the officers basically the same thing. She explained that, while in the car, Harris had become angry and punched Washington in the stomach. Cummings also said that she had been struck by Harris when she tried to intervene.

Seattle Fire Department Lieutenant Tobin Graves examined Washington and determined that she did not require additional medical attention. One of the investigating police officers, Matthew Good, noted that Washington had sustained scratches on her right elbow and left forearm.

Harris was charged with one count of domestic violence felony violation of a court order (based on an allegation of assault against Washington) and one count of assault in the fourth degree (against Cummings).

Prior to trial, Harris moved to exclude all evidence of Washington's pregnancy at the time of the alleged assault. The prosecutor answered that evidence of Washington's pregnancy was "very highly relevant to an element that the State has to prove." This was so, the prosecutor argued, because the evidence supported that a harmful or offensive touching had occurred, which was material to establishing the assaultive conduct underlying the charge of domestic violence felony violation of a court order.

During the hearing on Harris's motion, the following exchange took place:

> [THE COURT]: Okay. And then the one more issue you need to address. And that is Ms. Larson's argument this morning that because the State has the burden of showing a harmful offensive touching, the fact that Ms. Washington was pregnant goes directly to that issue.
> [DEFENSE COUNSEL]: Your Honor, I still -- my argument remains the same, which is that the State has to prove under -- in this case, it's (inaudible) is an assault. A harmful or offensive

touching isn't based on what Ms. Cummings thought it was. It would be based on what a reasonable person would be find to be harmful and offensive. While Ms. Cummings said that – described some assault, and then, you know, did say her concern was because of her pregnancy. I think that the State can still argue that a reasonable person would find any kind of hitting to be harmful or offensive. And, it's an Assault IV, pretty much.

I don't think the State would be precluded from making that argument. My concern about Ms. -- the State eliciting testimony about Ms. Washington being pregnant is that it -- I do think that it's very, very prejudicial to my client. It is, I think, probably the most shocking facts that the jury could hear in this case.

He's not being charged with assault. And so I'm --

[THE COURT]: Not being charged with assault?

[DEFENSE COUNSEL]: He's not being charged with assault of Ms. Washington. He's being charged with Felony Violation of [a Court Order] on one of the Assault prongs. I think that makes it a little bit different in the sense that, you know, we don't have Ms. Washington talking about the assault. And, it's just such -- it is -- I just think that -- I just think that that fact is so prejudicial to Mr. Harris. I, frankly, can't think of a more prejudicial fact for a male defendant and a female victim.

If the Court does allow the testimony or information through the 911 call, because I know that's a part of the 911 call, that Ms. Washington was pregnant at the time, I would ask the Court to limit the amount that Ms. Larson can argue that in closing.

I think some of my concern comes from the amount that we talk about it in testimony. And then, some of my concern comes from the amount that the State can focus on that issue during closing to make it -- I think that could quickly become a huge issue under 403.

[THE COURT]: Ms. Larson?

[PROSECUTOR]: I don't -- I actually don't have any objection to that. I mean, part of the reason I think that this is important to the State is to preclude defense from arguing, "Oh, you know, we don't know how hard the punch was. We don't have Ms. Washington here. We don't know, you know, if it was really harmful or offensive to her." And, you know, therefore, the State hasn't proven the assault beyond a reasonable doubt.

I mean, I do think it does obviously elevate the facts, aggravate the facts, that type of thing. I think, but I don't have any objection to the Court limiting my ability to argue that in closing. You know, I think that's actually probably the fair way to do it. To allow that testimony in, and then, you know, I can certainly curb my arguments. And defense is somewhat precluded from arguing that it, you know, wasn't that harmful an offense.

I think there's definitely a way to resolve that without the Court excluding it in its entirety.

[THE COURT]: Well, I -- I'm satisfied that it is relevant to the harmful or offensive touching. And so, that part of the 911 testimony or tape will be admissible.

But, I think that the parties have just discussed is a fair one. And, the jury will have heard it, but I don't think we need to have to emphasize the point.

Later during the hearing, the prosecutor again brought up the matter of

introducing evidence of Washington's pregnancy during trial:

[PROSECUTOR]: And, I just want to be clear so that I'm not violating any rulings. So, my motion here is both the firefighter, the reports of the firefighter, but also the statement to the officer at the scene that she was worried about her baby.

I understand this goes to the pregnancy issue that we just discussed. I think it is admissible under 803(A)3 statement of physical condition to the officer made immediately after the incident. And I, again, I think with that testimony coming out that goes to the element that the State is required to prove. But, I agree with what we previously discussed that I -- that won't be a hammer during closing. It's going to be discussed, but not something that is (inaudible), that'll be correct.

[THE COURT]: Yeah. Mr. Leavitt?

[DEFENSE COUNSEL]: I think that's fine.

During the State's case in chief and closing argument, Washington's

pregnancy was referenced on several occasions. No objections were interposed

by defense counsel in response to the mention of Washington's pregnancy.

After deliberation, the jury acquitted Harris of the felony violation of a court

order charge but convicted him of the lesser-included offense of misdemeanor

violation of a court order with a domestic violence special finding.

Harris was sentenced to 364 days of incarceration, 164 of which were

suspended.

II

Harris contends that the trial court erred by not excluding all evidence of Washington's pregnancy from the trial. We disagree.

Under ER 402, only relevant evidence is admissible at trial. ER 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The threshold for admitting relevant evidence is low and even "minimally relevant evidence is admissible." State v. Darden, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002) (citing State v. Hudlow, 99 Wn.2d 1, 16, 659 P.2d 514 (1938)). ER 403, however, requires the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." "'[U]nfair prejudice is that which is more likely to arouse an emotional response than a rational decision by the jury [and which creates]' . . . an undue tendency to suggest a decision on an improper basis." State v. Cronin, 142 Wn.2d 568, 584, 14 P.3d 752 (2000) (first alteration in original) (internal quotation marks omitted) (quoting State v. Gould, 58 Wn. App. 175, 183, 791 P.2d 569 (1990)).

"A trial court's evaluation of relevance under ER 401 and its balancing of probative value against prejudicial effect under ER 403 will be overturned only for manifest abuse of discretion." State v. Russell, 125 Wn.2d 24, 78, 882 P.2d 747 (1994)).

The trial court did not abuse its discretion by permitting the State to introduce limited evidence of Washington's pregnancy during the trial.

As a preliminary matter, the trial court's evidentiary ruling was initially suggested by defense counsel as an alternative ruling:

> If the Court does allow the testimony or information through the 911 call, because I know that's a part of the 911 call, that Ms. Washington was pregnant at the time, *I would ask the Court to limit the amount that Ms. Larson can argue that in closing.*
> *I think some of my concern comes from the amount that we talk about it in testimony. And then, some of my concern comes from the amount that the State can focus on that issue during closing* to make it -- I think that could quickly become a huge issue under 403.

(Emphasis added.) The trial court adopted defense counsel's suggestion and limited the State from emphasizing the pregnancy during the trial. Given that, Harris cannot now assert that the trial court erred by adopting his counsel's suggested compromise.[1]

Moreover, that Washington was pregnant at the time of the alleged assault and that the alleged assault included a strike to her stomach area was material to whether Harris had committed a harmful or offensive touching—a type of assault that the State was obligated to prove in order to convict Harris as charged. By limiting the degree to which the State could emphasize Washington's pregnancy, the trial court properly exercised its discretion by balancing the relevance of the evidence alongside its potential for unfair prejudice.

There was no error.

---

[1] If Harris believed that the State had violated the ruling in limine during the trial, Harris should have brought the matter to the trial court's attention with a timely objection. But Harris did not do so and we will not countenance a claim on appeal that was not brought to the attention of the trial court. RAP 2.5(a).

Affirmed.

We concur:

_Leach, J._

_Dwyer, J._

_Becker, J._