FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2018 JUN 11 AM 9:28

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) ) | No. 76058-1-I |
| v. | ) ) | UNPUBLISHED OPINION |
| BRENT JAMES SIENKIEWICH, | ) ) | |
| Appellant. | ) ) | FILED: June 11, 2018 |
| | ) | |

DWYER, J. — Brent Sienkiewich appeals from the judgment and sentence entered on a jury's verdict convicting him of one count of felony harassment. Sienkiewich contends that the trial court erred by denying, in part, his motion to redact a statement mentioning abortion from a trial exhibit. We disagree and conclude that the trial court properly weighed the statement's probative value against its potential for prejudice and determined that it was relevant to Sienkiewich's identity, motive, and the reasonableness of the victim's fear of death arising from his threatening communications.

Sienkiewich also contends that the sentencing court erred by imposing against him legal financial obligations in the form of a crime laboratory analysis fee and a criminal filing fee. The sentencing court erred, Sienkiewich asserts, because it imposed the foregoing legal financial obligations without inquiring into whether his mental health condition—a condition the sentencing court had earlier

determined was severe enough to warrant imposition of a lesser sentence—might affect his ability to participate in gainful employment enabling him to pay these legal financial obligations.

Sienkiewich is correct. Accordingly, we reverse the sentencing court's imposition of the crime laboratory analysis fee and the criminal filing fee and remand this matter to the sentencing court for further proceedings consistent with this decision.

I

In January 2015, Sienkiewich was charged with one count of felony harassment against Tammy Burrill—the mother of Sienkiewich's ex-girlfriend, Jacqueline Wellenbrock—with Sienkiewich's offensive conduct alleged to have occurred on or about September 21, 2014.

In the months leading up to the alleged harassing conduct, Sienkiewich and Wellenbrock had been in a strained romantic relationship. Sienkiewich also had a strained relationship with Burrill.

In late August 2014, nearly one month prior to the alleged harassing conduct, Wellenbrock gave birth to a child that she had conceived with Sienkiewich. For several weeks after their discharge from the hospital, Wellenbrock and the child lived with Sienkiewich at his parents' home. However, by mid-September, Wellenbrock ended her relationship with Sienkiewich and moved into a house with Burrill. Wellenbrock brought the child with her to Burrill's home. Burrill did not permit Sienkiewich to visit Wellenbrock and the child at her home.

Shortly thereafter, on September 21, 2014, Sienkiewich sent a series of electronic communications that were received by both Burrill and Wellenbrock.

The first such communication was sent early in the morning to both Burrill and Wellenbrock. It read: "Tammy you are a stupid fat xunt who has mingled to far."[1]

Later that day, in the early evening, Sienkiewich sent another electronic communication to both Burrill and Wellenbrock. It read: "You are one e smug cunt tammy. Im going to kill you one day."

Nearly an hour later, Sienkiewich sent a text message from his cellular telephone to Wellenbrock's cellular telephone. It read:

> Fine. Here it is. I will stay out of you and the babies life for the rest of your life. I don't need to hear your cunt lies and bullshit. I dont want to hear about the mindless sheep brained shit fuck youve become. The second you break your promise of no child support will be the day that *i dont just threaten your mom ill fucking kill her* then it and the list will keep going on and on until its just you left. Thats it. Thats all i had to say. Other than that do whatever the fuck you want. Change the name on the birth certificate or rename him wellenbrock. Go join a cult. [Fuck all the niggers you can.][2] *Show this to ur mom*, my parents and ur friends post it on facebook. Do whatever you want because im gone. Just dont break your word. I tried so hard to act like you werent a broken and used up toy. I tried to pretend you were smart. I tried to treat u with respect. You just talked shit behind peoples back. You did lie. You lied everytime u said i love u. Just like i lied to you. You were never my cheerleader. Theres no reason to fake any of this shit anymore. You got a free pass to move any where u want and do whatever u want with it. I wont put up a custody battle and u dont have to worry about me coming around on birthdays. Im done with you and the stupid cunt bitches like you. You shouldve had an abortion 10 months ago and not ruined everybodies life. For once you were the

---

[1] The communications from Sienkiewich to Wellenbrock and Burrill are set forth herein with the original grammar and spelling.

[2] This sentence was redacted from the corresponding trial exhibit pursuant to a pretrial ruling by the trial judge.

most selfish bitch of all time. I hate you i hate you i hate you. I will hopefully never have to see you again. Good ridence

Wellenbrock forwarded Sienkiewich's text message to Burrill. After reading the message, Burrill became fearful for her life and the lives of her family members. She contacted the police.

Sienkiewich was charged with one count of felony harassment against Wellenbrock. During a hearing prior to trial, Sienkiewich moved to redact several of the statements in the communications received by Wellenbrock and Burrill, including those mentioning a racial epithet, sexist language, and abortion.

The trial court granted Sienkiewich's motion in part, determining that, although the statements containing sexist language and the statement regarding abortion were admissible, the statement containing the racial epithet was unduly prejudicial and ordered it redacted from the trial exhibit.

Trial commenced thereafter and, upon the close of the trial's evidentiary stage, the jury convicted Sienkiewich as charged.

At sentencing, Sienkiewich requested a first time felony offender waiver pursuant to RCW 9.94A.650, alleging that a mental health condition contributed to his commission of the crime of conviction. The sentencing court found that a mental condition had contributed to his offensive conduct, granted Sienkiewich's request for a first time felony offender waiver, and sentenced him to 75 days of confinement.

Thereafter, the sentencing court imposed legal financial obligations against Sienkiewich including the $500 victim penalty assessment, the $200 criminal filing fee, and the $100 crime laboratory analysis fee. Although

Sienkiewich's mental health condition was at issue before the sentencing court and provided the basis for Sienkiewich's reduced sentence, neither the prosecutor nor the court addressed whether his mental health condition might contribute to his inability to pay the $200 criminal filing fee or the $100 crime laboratory analysis fee.

Sienkiewich now appeals.

II

Sienkiewich contends that the trial court erred by denying his request to redact from a proposed trial exhibit a statement mentioning the topic of abortion contained in a lengthy electronic communication that was received by Burrill. The trial court erred, Sienkiewich asserts, because the abortion statement was unfairly prejudicial to him. We disagree.

Under ER 402, only relevant evidence is admissible at trial. ER 401 defines "'[r]elevant evidence'" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The threshold for admitting relevant evidence is low and even "minimally relevant evidence is admissible." State v. Darden, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002) (citing State v. Hudlow, 99 Wn.2d 1, 16, 659 P.2d 514 (1983)).

ER 403, however, requires the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." "'[U]nfair prejudice is that which is more likely to arouse an emotional response than a rational decision by the jury [and which creates]' . . . an undue tendency to

suggest a decision on an improper basis." State v. Cronin, 142 Wn.2d 568, 584, 14 P.3d 752 (2000) (first alteration in original) (internal quotation marks omitted) (quoting State v. Gould, 58 Wn. App. 175, 183, 791 P.2d 569 (1990)).

"A trial court's evaluation of relevance under ER 401 and its balancing of probative value against prejudicial effect under ER 403 will be overturned only for manifest abuse of discretion." State v. Russell, 125 Wn.2d 24, 78, 882 P.2d 747 (1994).

As indicated, prior to trial, Sienkiewich's counsel moved to redact several statements set forth in the lengthier text message that Sienkiewich sent to Wellenbrock and that was forwarded to Burrill. Sienkiewich's counsel stated:

> MS. HISKES: My concern, your Honor, would be sentences like, "Fuck all the niggers you can." "I'm done with you and the stupid cunt bitches like you." "You should have had an abortion 10 months ago and not ruined everybody's life."
> THE COURT: You need to stop and go more slowly. Okay. "Fuck all the niggers." Okay. What's next?
> MS. HISKES: "I don't need to hear your cunt lies and bullshit."
> THE COURT: Okay.
> MS. HISKES: "I'm done with you and stupid cunt bitches like you."
> THE COURT: Okay.
> MS. HISKES: *"You should have had an abortion 10 months ago and not ruined everybody's life."*
> THE COURT: Okay.
> MS. HISKES: And the following sentence: "For once you were the most selfish bitch of all time."
> THE COURT: All right. You're wanting to redact these lines out of this message, or what?
> MS. HISKES: Yes, your Honor.
> THE COURT: What is your motion?
> MS. HISKES: Your Honor, my motion is to exclude -- redact this communication that is allegedly from Mr. Sienkiewich to Jackie Wellenbrock. This paper that we have in front of us, again, is a communication from one State witness to another. I think we're going to deal with those issues of hearsay and authentication

separately. But yes, my motion is that the parts of this communication that are not relevant to Mr. Hunter's case are not necessary for admission. They are inflammatory and should be redacted.

(Emphasis added.)

The prosecutor responded that each challenged statement should be admitted because

every piece of that is relevant to the fear. This case is about fear and the nature of this charge is about fear. If you isolate the statement, it doesn't look quite as scary. And if you are the person receiving this message, it makes a tremendous difference if you see it in the middle of this rant. Clearly the person is upset and angry. It's the State's theory that Mr. Sienkiewich blames the mother, Tammy, for sort of the break up with Jackie, which is why in the middle of this he threatens her based on all of this.

The trial judge then inquired, "Is one of the theories here that he's mad about the child and child support? I'm asking this in regards to the abortion statement."

The prosecutor responded:

It's my understanding and the theory and the evidence would be that Mr. Sienkiewich wanted Jackie and the baby to live with him and originally did for a very short time, but then went to live with Tammy and Jackie's father. It's my theory that that's why Mr. Sienkiewich is mad at Tammy, threatening to kill Tammy. It relates to the child, child support, abortion. It relates to everything in there.

Shortly thereafter, the trial judge issued her rulings as to several of the statements that Sienkiewich had requested be redacted:

I'll talk about each one of them individually. All right. All of these statements could arguably show that the Defendant was angry when he made the statement, just the tone of the whole thing, which I've already indicated previously because one of the elements the State has to prove is that it was reasonable to believe that this might be carried out, that this was a real threat. Showing the context of it is -- so it's admissible for a purpose other than to

- 7 -

show conformity with a bad act. It has admissibility under 404(b). However, the Court has to of course go beyond that and weigh the prejudice versus the probative value.

So I'm going to start with, "Fuck all the niggers you can." Excuse my language. It's not an all or nothing analysis, as Mr. Hunter is arguing. The Court can look to what other evidence that the State has. Given the entirety of this big long one statement or -- I don't know what you call it -- a Facebook post or something, this is sort of -- there's many, many other statements contained therein that show the same thing. This is just more of the same and there's a lot of other things that are actually more directly of point. More importantly, this particular statement, the use of the word "nigger" is historically considered extremely racist. There are probably jurors who you could never get past with the prejudice of such a word. So, the probative value is outweighed by the prejudice as to that one statement.

As to the statement, "I don't need to hear your cunt lies and bullshit," again, all of this, the tone of it, puts it in context, the actual threat. It's admissible under 404(b) for purposes other than conformity. Showing whether -- it's highly relevant to show the statements that surround the statement that's being admitted as the threat that are made at the exact same time. This shows his anger, the degree of the anger. It is prejudicial to hear swear words or negative words about women. That is prejudicial. But again, the Court has to weigh the probative value versus the prejudice. The swear words or the negative words about women are one way in which the anger is displayed. There are people who don't normally swear, but might swear when they're really, really angry. So, it's a way people show anger. In addition, I don't think the word "bullshit" is all that prejudicial. "Cunt" may be highly prejudicial, but it's coming in again already through another direct threat statement, so it's not a lot of additional prejudice. So on this statement, it does have relevance under 404(b) for a purpose other than conformity and the probative value outweighs the prejudice.

I'm making the exact same rulings as to the next statement. I'm not going to go through what I just said. It's the same exact analysis. Except I will indicate, "I'm done with you," again indicates sort of a finality or arguably it makes the statement, the whole statement, a more strong statement in context, making it more probative. So I'm going to incorporate my statements from the prior and my rulings from the prior statement into that one.

As to, "You were the most selfish bitch of all time," again, the same analysis as the last two. Again, the word "bitch" is prejudicial, but it does show a degree of anger. This is a statement actually made at the same time as the threat. It has probative value that outweighs the prejudice.

Immediately thereafter, the trial judge indicated that she would reserve ruling on the admissibility of Sienkiewich's statement that mentioned abortion.

The trial judge then entered additional pretrial rulings, presided over voir dire, and swore in the jury. After excusing the jury for a brief recess, the trial judge indicated that she would be issuing her ruling on the admissibility of the abortion statement. The trial judge stated:

> There were a couple of issues that I took under advisement or reserved on earlier. One was the issue of I'll just call it the abortion statement in the long e-mail message. I am going to permit that. I do find -- well, first of all, I find it has relevance outside of any tendency to prove conformance with any bad act and that it has multiple items about it that make it relevant. First of all, it would help show and prove who sent the message because it gives an age of the child in months which would help identify and prove the writer of it. It indicates motive for the anger towards the mother or ties into the motive having to do with the child support and the child. And while prejudicial, it does show extreme anger that someone would make a statement like that. It, in essence, does show the tone of the statement. I understand it's prejudicial, but I'm finding that the probative value in this instance does outweigh the prejudice. It's also made, coincidentally, at the time as the charged incident. So it's part of the context of what's all going on in that conversation.

The trial judge's ruling was tenable. The trial judge properly identified that, although the abortion statement was "highly prejudicial," the probative value of the statement's admission outweighed its potential for prejudice to Sienkiewich. The trial judge soundly reasoned that the abortion statement aided in establishing Sienkiewich's identity as the person who sent the message, his possible motives for sending the message, and the reasonableness of Burrill's fear in light of the "extreme anger" underlying his communications. Thus, the trial

court did not abuse its discretion by denying Sienkiewich's request to redact the abortion statement.

There was no error.

## III

Sienkiewich next contends that the sentencing court erred by imposing against him a $100 crime laboratory analysis fee and a $200 criminal filing fee. This is so, Sienkiewich asserts, because the sentencing court did not inquire into whether his mental health condition impacted his ability to pay these legal financial obligations even though the sentencing court had moments earlier determined that his mental health condition justified imposing a reduced sentence against him. Sienkiewich's contention has merit.

The procedure for imposition of legal financial obligations against defendants with mental health conditions is established by statute. RCW 9.94A.777 reads:

> **Legal financial obligations—Defendants with mental health conditions.** *(1) Before imposing any legal financial obligations upon a defendant who suffers from a mental health condition,* other than restitution or the victim penalty assessment under RCW 7.68.035, *a judge must first determine that the defendant, under the terms of this section, has the means to pay such additional sums.*
> (2) For the purposes of this section, a defendant suffers from a mental health condition when the defendant has been diagnosed with a mental disorder that prevents the defendant from participating in gainful employment, as evidenced by a determination of mental disability as the basis for the defendant's enrollment in a public assistance program, a record of involuntary hospitalization, or by competent expert evaluation.

(Emphasis added.)

It is thus statutorily required that, prior to imposing the legal financial obligations specified in RCW 9.94A.777 against a defendant with a mental health condition, the sentencing court must inquire into whether the defendant suffers from a mental health condition, as set forth in subsection (2), affecting the defendant's ability to pay such additional fees. Hence, when a defendant's established mental health condition is at issue at sentencing, the court cannot impose the legal financial obligations specified in RCW 9.94A.777 without first entering the finding referenced in the statute.

Here, during the sentencing hearing, the State requested that the court impose 75 days of confinement and that the court deny Sienkiewich's request for a first time felony offender waiver. The State also requested that the court impose against Sienkiewich legal financial obligations including the victim penalty assessment, the crime laboratory analysis fee, and the criminal filing fee. The prosecutor acknowledged that he didn't "know a lot about the Defendant's financial condition with respect to attorney's fees or any other costs."

In response, Sienkiewich's counsel urged the court to impose a first time felony offender waiver on the basis that Sienkiewich's mental health condition contributed to his criminal conduct. In support of this request, Sienkiewich's counsel stated:

> Your Honor, the Defense is asking you to impose the first time felony offender waiver based on the lack of felony history on Mr. Sienkiewich's part, *but also the role of mental health in this case.* I added some information in my brief. I did not add specifically what Mr. Sienkiewich had been diagnosed with for sake of protecting his privacy. I know he wants to address that. But briefly, some of his diagnoses are anxiety, depression, and then borderline personality disorder which is a chronic disorder that causes attention seeking

behavior and histrionic emotional outbursts. I think that, given the circumstances that he was under, he had a mental health episode that unfortunately impacted some other people. He is trying to address it. I have seen letters proving that he was in therapy from January 2014 to present. He did try to get into the TAP program. That didn't work out.

(Emphasis added.) Thereafter, Sienkiewich spoke to the sentencing court at length regarding his mental health condition and its contribution to his criminal conduct.

The State did not address Sienkiewich's claim that a mental health condition contributed to his offensive conduct. Additionally, in requesting that legal financial obligations be imposed against Sienkiewich, the State did not address whether Sienkiewich's mental health condition might affect his ability to pay such additional sums pursuant to RCW 9.94A.777.

The sentencing court then imposed sentence against Sienkiewich.

At this time I'm going to impose the amount of jail time requested by the State, 75 days in jail. However, I'm also imposing the first time offender waiver because I believe that Mr. Sienkiewich needs to be on community custody or probation. *It's alleged, and I find, that a mental health disorder did contribute to this.* I will order that he's to be on community custody or probation for one year following his release from confinement. *During that time he's to comply with continuing to get mental health counseling and take any medications as recommended by his doctors and mental health providers.*
. . . *The Court will impose the mandatory financial obligations of* a *$500 victim penalty, a $100 DNA sample fee.* I hereby order that a DNA sample will be taken for identification analysis as required by law. *The Court will also impose the mandatory $200 filing fee,* restitution in an amount to be reserved, if any.[3]

---

[3] Sienkiewich's appellate briefing states that the sentencing court found that he was indigent. However, the record that we have been favored with on appeal sets forth no such express trial court finding. Although Sienkiewich directs us to the judgment and sentence entered against him that set forth a waiver of the imposition of fees regarding court appointed attorneys and court costs, Sienkiewich does not present us with an explicit superior court finding establishing his indigency.

(Emphasis added.)

By imposing the crime laboratory analysis fee and the criminal filing fee against Sienkiewich without first inquiring into whether his mental health condition was one that affected his ability to pay these additional fees, the sentencing court erred. As indicated, prior to its imposition of legal financial obligations against Sienkiewich, the sentencing court had found that he suffered from a mental health condition that contributed to his criminal conduct. The sentencing court further determined that Sienkiewich's mental health condition was severe enough to warrant imposition of a lenient sentence.

Sienkiewich's mental health condition was squarely before the sentencing court prior to its imposition of legal financial obligations against him. The court, given the mandate of RCW 9.94A.777, should have engaged in fact-finding to determine whether Sienkiewich's established mental health condition affected his ability to pay the crime laboratory analysis fee and the criminal filing fee sought by the State. In disregarding the mandate of RCW 9.94A.777, the sentencing court erred.

Accordingly, we reverse the sentencing court's imposition of the crime laboratory analysis fee and the criminal filing fee and remand this matter for further proceedings consistent with this decision.[4]

---

[4] We reach no determination as to whether Sienkiewich's mental health condition, in actuality, affects his ability to participate in gainful employment. This is a matter to be addressed on remand, should the State continue to seek imposition of the challenged fees.

Reversed and remanded.

We concur:

Trickey, J

Dwyer, J.

Spearman, J.