IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31890-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JAMES DOUGLAS COURTER, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — A jury returned verdicts finding James Douglas Courter guilty of felony hit and run and driving under the influence (DUI) with a special finding that he refused to take a blood alcohol concentration test (BAC). Mr. Courter appeals, asserting (1) the trial court abused its discretion under ER 403 by admitting duplicative and prejudicial photographs of the accident scene, (2) the State failed to present sufficient evidence to support the DUI and hit and run convictions, (3) the trial court erred in failing to give a limiting instruction on the use of BAC refusal evidence, (4) his trial counsel was ineffective for failing to request a limiting instruction, and (5) the prosecutor committed misconduct by arguing that Mr. Courter's refusal to submit to a BAC test was evidence that he was guilty of DUI. We disagree with his contentions and affirm in all respects.

## FACTS

During the early evening of December 13, 2012, James Courter was driving his Jeep Grand Cherokee south on Hansen Road in Moses Lake, Washington, toward the intersection of North Frontage and Hansen Roads. As he pulled into the intersection, the front end of his jeep collided with the passenger side of a Toyota Corolla driven by Ellen Russell. Mr. Courter drove his jeep about 150 feet or more from the point of the collision. The collision caused extensive damage to both vehicles. Ms. Russell and her passenger, Elsa Jensen, were injured in the collision. It is undisputed that Mr. Courter did not stop to provide aid to them.

Trooper Phil Jesse responded to the scene of the accident. Upon arrival, he asked Mr. Courter to provide his license and proof of insurance and registration. Trooper Jesse noticed that Mr. Courter passed over his registration at least two times and that Mr. Courter had a strong odor of intoxicants on his breath. Trooper Jesse eventually had to point out the needed document. At that time, Mr. Courter denied consuming any alcohol.

Trooper Jesse then attempted to conduct field sobriety tests. Mr. Courter was unable to perform the horizontal gaze nystagmus test without moving his head. The trooper was not able to conduct the other tests because Mr. Courter continuously put his hands in his pockets, causing officer safety concerns. Trooper Jesse arrested Mr. Courter

2

for DUI and handcuffed him with the assistance of another officer. During the encounter with police, Mr. Courter's speech was slurred.

Trooper Jesse took Mr. Courter to a local hospital because Mr. Courter was complaining of neck pain. At the hospital, after being given his informed consent warnings, Mr. Courter refused to submit to a BAC test. In a later DUI interview, Mr. Courter admitted to drinking "'a couple of beers.'" Report of Proceedings (RP) (Aug. 8, 2013) at 159. The State charged Mr. Courter by amended information with felony hit and run (injury) and DUI with a special allegation that he refused a BAC test.

Before trial, defense counsel moved to exclude any reference to Mr. Courter's refusal to consent to the blood draw as evidence of criminal wrongdoing. The court denied the motion, concluding that the refusal evidence could be used to prove the special allegation, but reserved as to whether it could be used as evidence of guilt on the DUI charge. After additional research, the court later ruled that the evidence could be used as evidence of guilt of the DUI.

Over defense counsel's objection, the State sought to admit 12 photographs related to the collision. Exhibit 3 was a photograph of the Toyota after the collision. Exhibit 4 showed the Toyota from another angle with medics attending to the occupants. Exhibit 5 showed the damage to the passenger side of the Toyota and a deployed air bag. Exhibit 6

3

was a close up of Exhibit 5. Exhibit 7 showed the Toyota after the passenger door had been removed. Exhibit 8 showed the interior of the Toyota and the damage to the dashboard and interior of the vehicle. Exhibit 9 showed the damage to Mr. Courter's Jeep Cherokee and its position relative to the stop sign. Exhibit 10 showed the damage to Mr. Courter's jeep from another angle and its location relative to the fog line. Exhibits 11, 12, and 13 were photographs of a box of beer from different angles.

Mr. Courter argued that all of the photographs should have been excluded as cumulative and prejudicial, except for one or two photographs of the Toyota, one of the Jeep, one of the box of beer, and one of the beer cans. The court admitted all of the photographs, finding the prosecutor had articulated reasons for each photograph and that each photograph showed "different viewpoints and perspectives." RP (Aug. 8, 2013) at 20. The court also found that each photograph had the "distinct and strong possibility of being helpful to the jury." RP (Aug. 8, 2013) at 20.

Robert Richardson witnessed the collision. He testified that he saw a speeding Jeep Cherokee round a bend just north of Hansen Road and collide with a white Toyota in the middle of the intersection of North Frontage and Hansen Roads. Mr. Richardson estimated the jeep was traveling at least 45 miles per hour in a 35 mile per hour zone. After briefly checking on the status of the occupants of the Toyota, he went to check on

4

the driver of the jeep. As he approached the passenger side of the jeep, he noticed Mr. Courter was trying to start the vehicle. Mr. Richardson opened the passenger door and told Mr. Courter to wait for a paramedic, but Mr. Richardson stated he needed to leave to pick up his child. Mr. Courter then exited his car and started to walk west on Frontage Road away from the collision. Mr. Richardson could smell alcohol on Mr. Courter's breath. As Mr. Richardson walked toward police officers who had arrived at the scene, he saw Mr. Courter throwing something over a berm toward Interstate 90. Mr. Richardson stayed at the scene the entire time. He did not see Mr. Courter return to the crash scene, attempt to contact Ms. Russell or Ms. Jensen, or provide information or assistance to them.

Benjamin Sachs and his wife, Mariah Sachs, testified at trial. Mr. Sachs testified that they were on the Mae Valley exit from Interstate 90 at 6:00 p.m. on December 13, 2012, when they noticed the accident on the side of the road. Mr. Sachs called 911 and Ms. Sachs checked on the occupants of the white car. Ms. Sachs testified that she saw Mr. Courter "[w]alking westward down Frontage Road away from the accident." RP (Aug. 9, 2013) at 131. She then saw him return to his car, grab something rectangular with handles, and then head west again. According to Ms. Sachs, it took police officers about 10 minutes to arrive at the scene of the accident. She testified that during this time,

Mr. Courter did not approach the occupants of the Toyota. She also observed that Mr. Courter was argumentative with police officers and that his speech was slow and slurred.

Sergeant Brian Jones of the Moses Lake Police Department testified that upon arrival at the scene, he saw the Toyota in a ditch and the jeep about 100 feet from the intersection. Sergeant Jones took photographs of the cars and a box of beer he found on the side of the road behind a bush near Mr. Courter's jeep. Sergeant Jones observed that Mr. Courter would not comply with Trooper Jesse's attempt to conduct field sobriety tests and, subsequently, helped the officer handcuff Mr. Courter.

Ellen Russell testified that on the evening in question, she was driving to a Christmas dinner with her friend, Ms. Jensen. Ms. Russell stated that she stopped at the intersection of North Frontage Road and Hansen Road and did not see any vehicle approaching from the right. Ms. Russell testified that her car was hit as soon as she entered the intersection. After the collision, Ms. Russell noticed that the passenger side air bag had deployed and that emergency personnel had to cut off the passenger side door to extricate Ms. Jensen. Ms. Russell testified that as a result of the collision, her collarbone was injured and she had a cut on her right hand that required stitches. She also stated that she never saw the driver of the jeep.

Ms. Jensen testified that the impact of the collision shattered the windshield, deployed the passenger side airbag, and pinned her in her seat. She testified that emergency personnel had to extract her from the car with the "Jaws of Life." RP (Aug. 8, 2013) at 88. The collision caused injuries to her rotator cuff, extensive bruising along her chest and right thigh, and an aggravation of a recent knee surgery.

Trooper Jesse testified that when he arrived at the scene, Mr. Courter's speech was slurred, he was uncooperative with field sobriety testing, and his breath smelled of alcohol. Based on his observations of Mr. Courter's demeanor, the collision, and the odor of intoxicants, Trooper Jesse concluded that Mr. Courter was intoxicated and "should not have been driving." RP (Aug. 8, 2013) at 161. He also opined that despite Mr. Courter's intoxication and the collision, Mr. Courter was capable of understanding the events and was not in shock.

Mr. Courter testified that on the night in question he was heading to a local high school to pick up his fiancée's son from basketball practice. He said it was dark and his headlights were on. He denied speeding and explained that he did not hit his brakes because he did not see the Toyota in the intersection until impact. After the collision, he got out of his car to assess the damage. He claimed that he never intended to leave the scene or run away, explaining that he believed that Mr. Richardson was the occupant of

7

the other car and unharmed. Mr. Courter admitted to drinking part of a bottle of beer before the accident. During cross-examination, Mr. Courter admitted that he attempted to leave the scene of the accident to pick up his son and that he attempted to hide the box of beer. He also admitted that he did not check on the occupants of the other vehicle.

The jury found Mr. Courter guilty as charged.

## ANALYSIS

A. *Whether the trial court erred in admitting duplicative photographs*

Mr. Courter argues the trial court abused its discretion under ER 403 by admitting exhibits 3 and 5 through 10. He contends the photographs of the Toyota and jeep were duplicative and unnecessary to prove that Mr. Courter was involved in an accident. He maintains that the State's primary purpose for submitting the photographs of the Toyota was to "inflame the jury's passions by showing photographs of the other driver's vehicle, which had been torn apart by the Jaws of Life, and medics attending to occupants of the other vehicle." Br. of Appellant at 10. The State responds that the photographs were relevant to the charges and issues at trial.

Under ER 403, otherwise relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or

8

needless presentation of cumulative evidence." The admissibility of photographs is generally within the sound discretion of the trial court. And the trial court's ruling will not be disturbed on appeal absent a showing of an abuse of discretion. *State v. Crenshaw*, 98 Wn.2d 789, 806, 659 P.2d 488 (1983). Accurate photographic representations are admissible if their probative value outweighs their prejudicial effect. *Id.*

Evidence causes unfair prejudice when it is more likely to arouse an emotional response than a rational decision by the jury. *State v. Cronin*, 142 Wn.2d 568, 584, 14 P.3d 752 (2000) (quoting *State v. Gould*, 58 Wn. App. 175, 183, 791 P.2d 569 (1990)). Our Supreme Court has suggested that unfair prejudice should be evaluated in terms of erroneous inferences that undermine accurate fact finding and fairness. *City of Auburn v. Hedlund*, 165 Wn.2d 645, 655, 201 P.3d 315 (2009). Photographs showing different angles and distances may not be cumulative. *State v. Pirtle*, 127 Wn.2d 628, 654-55, 904 P.2d 245 (1995).

Mr. Courter objects to five of six photographs of the Toyota and the two photographs of his jeep.[1] While the photographs of the Toyota demonstrate some common features, they each show different angles and perspectives, including three

---

[1] Mr. Courter did not designate the exhibits he challenges on appeal. However, the parties do not dispute the contents of the photographs and the record adequately describes their depictions.

photographs of the interior, the position of the Toyota at the scene of the accident, and a photo of the exterior damage. The two photos of Mr. Courter's jeep show damage to the jeep from two different angles. The State may introduce photographs to prove every element of the crime. *State v. Gentry*, 125 Wn.2d 570, 609, 888 P.2d 1105 (1995). Here, the State had the burden of proving there was an accident that resulted in an injury. Thus, the State was entitled to show evidence that made the existence of an injury more likely. Because injury is an essential element of felony hit and run, the photos of the damage to the Toyota, including the removal of a side door and a medic extracting Ms. Jensen from the car were relevant to show the severity of the accident. It is apparent from the record that the court had these considerations in mind as it reviewed each photograph on the record and admitted them.

Ultimately, Mr. Courter objected to the admission of 8 of 12 photographs. We are not persuaded that the admission of these 8 photographs, which were not gruesome, over the course of a three-day trial, were so cumulative or prejudicial that reversal is warranted. The court acted within its discretion in admitting the challenged photographs.

B. *Whether the evidence was sufficient to convict*

1. *Driving Under the Influence.* Mr. Courter contends the evidence does not support his convictions for DUI and hit and run. As to the DUI conviction, he contends

the evidence is insufficient to establish that he was affected by intoxicating liquor at the time of the collision. He contends that, at most, the evidence shows that he consumed two beers over a period of four hours and, therefore, he could not have been affected by the alcohol. He also contends his attempt to hide the box of beer, the odor of intoxicants on his breath, and his impaired speech and inability to follow directions do not rise to the level of substantial evidence of DUI. Mr. Courter points to an alleged head injury as the more reasonable explanation for his speech impairment and inability to follow directions.

A challenge to the sufficiency of the evidence admits the truth of the State's evidence and any reasonable inferences drawn from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We review the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* We do not reweigh the evidence. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Instead, we defer to the jury's resolution of conflicting testimony, evaluation of witness credibility, and the weight to be given the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

To convict Mr. Courter of DUI, the State had to prove that he drove a vehicle while under the influence of or affected by intoxicating liquor. RCW 46.61.502(1)(c); *State v. Shabel*, 95 Wn. App. 469, 474, 976 P.2d 153 (1999). A person is under the

11

influence of intoxicating liquor if "the ability to handle an automobile was lessened in an appreciable degree by the consumption of intoxicants or drugs." *State v. Wilhelm*, 78 Wn. App. 188, 193, 896 P.2d 105 (1995). Such evidence may be circumstantial. *Id.* at 192-93.

Here, Mr. Richardson testified that Mr. Courter was traveling at least 10 miles above the speed limit, crashed into another vehicle, and smelled of alcohol. Other witnesses' descriptions of Mr. Courter were consistent with the effects of alcohol. Ms. Sachs testified that Mr. Courter's speech was slow and slurred. Trooper Jesse testified that Mr. Courter smelled of alcohol, that his speech was slurred, and that he was not able to follow instructions for a field sobriety test. Based on these observations, Trooper Jesse concluded that Mr. Courter was not safe to drive. Mr. Courter admitted that he failed to brake and that he collided with another car in the intersection.

Furthermore, Mr. Courter displayed consciousness of guilt. He attempted to hide a box of beer and refused to take a BAC test. The most reasonable inference, favorable to the State, from this refusal is that he refused the test because he was intoxicated. *See City of Seattle v. Stalsbroten*, 138 Wn.2d 227, 234, 978 P.2d 1059 (1999) (refusal to submit to a field sobriety test "'is best described as conduct indicating a consciousness of guilt'") (quoting *Newhouse v. Misterly*, 415 F.2d 514, 518 (9th Cir. 1969)).

12

Mr. Courter asks this court to accept his testimony that he consumed at most two beers over a four-hour period. However, the jury had ample reason to question Mr. Courter's credibility. Mr. Courter initially denied drinking at all. Later, on the way to the hospital, he told Trooper Jesse that he had consumed two beers. At trial, he testified that he opened a beer, but did not have a chance to finish it. These inconsistent positions likely undermined his credibility in the eyes of the jury.

In the end, Mr. Courter attempts to isolate all of the evidence against him, arguing that each piece alone is insufficient for a finding of guilt. However, viewing the evidence together in a light most favorable to the State, it is sufficient to support the jury's finding that Mr. Courter was under the influence of alcohol while driving a vehicle.

2. *Hit and Run.* Mr. Courter also contends that the evidence was insufficient to prove felony hit and run. Specifically, he contends that his walk to hide the box of beer did not constitute fleeing the scene of an accident. He points out that he returned to his car and gave the statutorily required information to a police officer. He also argues that he was not derelict in his duty to render reasonable assistance to Ms. Russell and Ms. Jensen because they were treated at the scene by a nurse and paramedics.

To convict a defendant of felony hit and run, the State must prove (1) there was an accident resulting in death or injury, (2) the driver failed to immediately stop and return to

13

the scene to provide the required information and assistance, and (3) the driver had knowledge of the accident. RCW 46.52.020(1); *State v. Bourne*, 90 Wn. App. 963, 969, 954 P.2d 366 (1998). The purpose of RCW 46.52.020 is to promote immediate assistance to injured persons and to facilitate accident investigations, including preventing drivers from avoiding liability for their acts by leaving the scene without providing the required information. *State v. Vela*, 100 Wn.2d 636, 641, 673 P.2d 185 (1983); *State v. Silva*, 106 Wn. App. 586, 593, 24 P.3d 477 (2001).

Here, there was sufficient evidence to support the jury's finding that Mr. Courter was guilty of felony hit and run. It was undisputed that he was driving the car that collided with Ms. Russell's car. Both Ms. Russell and Ms. Jensen testified to the injuries they sustained from the accident. Mr. Courter admitted that he tried to restart his car so that he could leave the scene to pick up his son from school. After he was unable to restart his car, he walked away from the accident to hide a box of beer without attending to the victims of the crash or providing them with the requisite information. He claims that his return to his car establishes that he was not fleeing for purposes of the hit and run statute. But in the absence of evidence that he immediately assisted Ms. Russell and Ms. Jensen, the evidence was sufficient to convince a jury that Mr. Courter committed felony hit and run.

14

Contrary to Mr. Courter's argument, it was not sufficient to provide the arresting police officer with some of the statutorily required information. The statute unambiguously requires a driver involved in an automobile accident to provide the information to "any person struck or injured or the driver or any occupant of, or any person attending, any such vehicle collided with." RCW 46.52.020(3).

C. *Whether the trial court erred in giving an instruction inferring guilt*

Mr. Courter contends the trial court erred in failing to instruct the jury that the BAC refusal evidence was admissible for the sole purpose of proving the special refusal allegation. Mr. Courter concedes that under *State v. Long*, 113 Wn.2d 266, 778 P.2d 1027 (1989), evidence that a person refused a BAC test is admissible to infer guilt of DUI. However, he contends that because the trial court admitted the evidence for the limited purpose of proving the special allegation, the law of the case doctrine mandates that it must instruct the jury according to its evidentiary ruling.

Mr. Courter's argument overlooks the court's final ruling on the issue. Initially, the court ruled that the refusal evidence could be used to prove the special allegation, but reserved as to whether it could be used as evidence of guilt on the DUI. However, it later ruled that the refusal evidence could be used as evidence of guilt on the DUI. Mr. Courter does not dispute that this is a correct statement of the law. Under these facts, no

15

limiting instruction was necessary.

D. *Whether defense counsel was ineffective*

In an argument related to the instruction issue, Mr. Courter contends his trial counsel was ineffective for failing to request an instruction limiting the purpose of the BAC refusal evidence to proof of the special allegation. To prevail on an ineffective assistance of counsel claim, Mr. Courter must show both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's performance is deficient if it fell below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). If an ineffective assistance claim fails to support a finding of either deficiency or prejudice, it fails. *Strickland*, 466 U.S. at 697.

Mr. Courter fails to show that trial counsel's performance was deficient. Because the trial court properly admitted the evidence of Mr. Courter's refusal to submit to a BAC test as evidence of guilt on the DUI charge, there was no basis for defense counsel to request a limiting instruction. Accordingly, Mr. Courter's ineffective assistance of counsel claim fails.

E. *Whether the prosecutor committed misconduct*

Finally, Mr. Courter contends that the prosecutor committed misconduct during closing argument when he argued that Mr. Courter's refusal to take a BAC test was evidence that Mr. Courter was intoxicated. He argues that the prosecutor's disregard of the court's limitation on the use of the BAC evidence was so flagrant and ill-intentioned that a curative instruction could not have negated the prejudice it created.

To succeed on a claim of prosecutorial misconduct, a defendant must establish both misconduct and prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)).

During closing argument, the prosecutor referenced Mr. Courter's refusal to take the BAC test as follows: "And right there with the chance to put up or shut up, the Defendant said 'No, I don't want to take that test.' And that's—that's something you can consider. Why didn't the Defendant want to take that test? Well, he knew how much he had to drink that day." RP (Aug. 9, 2013) at 200.

Again, Mr. Courter's argument is premised on his misunderstanding of the record. Contrary to his assertion, the trial court did not rule that refusal evidence could not be

used to infer guilt. Thus, the prosecutor's statement was neither improper nor prejudicial. Mr. Courter's prosecutorial misconduct claim fails.

We affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Brown, J.

Siddoway, C.J.

18