

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE  NOV 2 6 2014

Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00am on Nov. 26, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 89302-1 |
| Petitioner, | ) | |
| v. | ) | En Banc |
| JOHN A. JONES III, | ) | |
| Respondent. | ) | Filed  NOV 2 6 2014 |

C. JOHNSON, J.—This case involves whether a trial court must give effect to the provision in RCW 9.94A.530(2) that permits both parties to present additional relevant evidence of criminal history at resentencing following remand from appeal or collateral attack. In this case, the trial judge concluded that the "no second chance" rule we announced in *State v. Ford*[1] was based on constitutional principles of due process and therefore the legislature was not free to alter this rule. The Court of Appeals affirmed. Because the "no second chance" rule was based on judicial economy, not due process, we hold that the legislature was within its

---

[1] *State v. Ford*, 137 Wn.2d 472, 973 P.2d 452 (1999).

authority to alter our rule and that the statutory remand provision controls. We reverse.

FACTS AND PROCEDURAL POSTURE

John A. Jones III's 2008 criminal conviction for second degree assault is not in dispute.[2] At his first sentencing hearing, the State presented evidence of several California convictions, including one count of murder with a firearm, two counts of attempted murder with a firearm, and one count of assault with a firearm. The trial court calculated Jones's offender score as 6 by including the murder and attempted murder convictions, and sentenced Jones to an exceptional sentence of 120 months. Jones appealed, and the Court of Appeals vacated his sentence because the trial court had failed to perform a comparability analysis of his California convictions. On remand for resentencing, the State supplemented the record, over Jones's objection, with new evidence of Jones's murder and attempted murder convictions and an additional drug conviction. After performing a comparability analysis on these convictions, the trial court recalculated Jones's offender score as 7 (now with the additional drug conviction). The court again sentenced Jones to an exceptional sentence of 120 months.

---

[2] A special verdict also found that the offense was committed within the sight or sound of the victim's or defendant's minor child, which permits imposing an exceptional sentence.

Jones appealed again. The Court of Appeals vacated his sentence, this time because the State failed to establish Jones's convictions by a preponderance of the evidence when it presented a copy of a probation report, which the State had represented to the court as being a plea colloquy. At the third sentencing hearing, at issue here, the State offered an uncertified copy of a California plea colloquy in order to establish Jones's prior convictions. It also moved for a short continuance to obtain a certified copy. The trial court, however, denied the motion, concluding that based on our holdings in *State v. Mendoza*, 165 Wn.2d 913, 205 P.3d 113 (2009) and *State v. Hunley*, 175 Wn.2d 901, 287 P.3d 584 (2012), a trial court could not permit the State to supplement the record on resentencing. Verbatim Report of Proceedings (Second Resentencing) at 9 ("In reading *Mendoza* as well as *Hunley*, it's my conclusion that the State, in this case, does not get another bite at the apple."). Without the California convictions, Jones's offender score was calculated as 1 and he was sentenced to an exceptional sentence of 60 months. A few days later, the State filed a certified copy of the plea transcript that allegedly establishes the comparability of the California convictions.

The State appealed. In affirming the trial court, the Court of Appeals adhered to the "no second chance" rule we announced in *Ford*—that the State may not offer new evidence at sentencing when the defendant raised an objection. The

State, however, argued that the 2008 amendments to RCW 9.94A.530, which were made in direct response to our decision in *Ford*, permit the State to offer new evidence upon remand, regardless of defense objection. The Court of Appeals disagreed. It held it was "not in a position to declare that the 'no second chance' rule set forth in *Ford* is no longer in effect. Once the Supreme Court has decided an issue of state law, that interpretation is binding on all lower courts until it is overruled by the Supreme Court." *State v. Jones,* noted at 175 Wn. App. 1074, 2013 WL 4069516, at *6 (citing *State v. Gore*, 101 Wn.2d 481, 487-88, 681 P.2d 227 (1984)). Instead, it held that "the State must first convince the Supreme Court that it lacked a constitutional basis for establishing the contrary rule in *Ford*." *Jones,* 2013 WL 4069516, at *6. We granted review. *State v. Jones*, 179 Wn.2d 1008, 316 P.3d 494 (2014).

STANDARD OF REVIEW

This case challenges the legal conclusion that the legislature lacks the authority to overrule *Ford*'s "no second chance" rule because the rule is based on constitutional principles of due process. We review such conclusions de novo. *State v. Gatewood,* 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

4

ANALYSIS

The legislature has plenary authority over sentencing. *See State v. Benn,* 120 Wn.2d 631, 670, 845 P.2d 289 (1993). Under this authority, it passed the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, which guides sentencing discretion through the SRA's detailed statutory procedures. The legislature may also validly amend these procedures in response to judicial interpretation, except when such judicial interpretation is based on the constitution. This is because "[t]he legislature may change a statutory interpretation, but it cannot modify or impair a judicial interpretation of the constitution." *Hunley,* 175 Wn.2d at 915 (citing *Seattle Sch. Dist. No. 1 v. State,* 90 Wn.2d 476, 497, 585 P.2d 71 (1978)). In ruling that it could not permit the State to present additional evidence of Jones's California convictions on remand, the trial court necessarily concluded that the legislature lacked authority to change the "no second chance" rule we announced in *Ford* because the rule was based on constitutional principles of due process.

In *Ford,* we held that an unpreserved sentencing error may be raised for the first time upon appeal because sentencing can implicate fundamental principles of due process if the sentence is based on information that is false, lacks a minimum indicia of reliability, or is unsupported in the record. *Ford,* 137 Wn.2d at 481. We

then addressed how the parties would proceed on remand. We stated that "[i]n the normal case" we would hold the State to the existing record. *Ford,* 137 Wn.2d at 485. However, because the defendant in *Ford* had not objected and put the State "on notice as to any apparent defects," we permitted the State to prove the disputed convictions with additional evidence on remand. *Ford,* 137 Wn.2d at 485. In crafting this rule, we reasoned it would both preserve the purpose of the SRA to impose fair sentences on the basis of provable facts and also provide the proper disincentive for defendants who purposefully fail to object in the hope of reversal by an appellate court. *Ford,* 137 Wn.2d at 486.

*Ford* created a framework for analyzing when the State would be permitted to present additional evidence on remand: if the defendant had objected, the State would be limited to the record it had previously established; if the defendant had not objected, the State would be permitted to present additional evidence. For example, we followed the "no second chance" rule in *State v. Lopez,* 147 Wn.2d 515, 521, 55 P.3d 609 (2002), holding that the State was limited to the existing record because the defendant had objected. By contrast, in *Mendoza* we allowed the State to supplement the record at resentencing because the defendant did not object. *Mendoza,* 165 Wn.2d at 930.[3]

---

[3] *Mendoza* was argued just months after the 2008 amendments became effective and was decided in 2009. However, the sentencing at issue in that case occurred in 2006. Although we

But the "no second chance" rule cannot be viewed as constitutionally based. Our later case law recognized this and instead focused on what constitutes notice. For example, in *Bergstrom,* we allowed the State to provide additional evidence on remand because of the "unique circumstances" of the case. *State v. Bergstrom,* 162 Wn.2d 87, 98, 169 P.3d 816 (2007) (holding that the State was not on notice when defense counsel acknowledged criminal history over defendant's explicit objection). The dissent in *Bergstrom,* however, argued that the State *was* put on notice by the defendant's objection. *Bergstrom,* 162 Wn.2d at 100 (Alexander, C.J., dissenting). And in *In re Personal Restraint of Cadwallader,* 155 Wn.2d 867, 123 P.3d 456 (2005), we held that the State was not permitted to introduce new evidence on remand of a prior conviction, under the peculiar facts of that case, even though the defendant did not object. Justice Bridge, in her dissent, remarked that "the legislature would likely not endorse the majority's decision to prohibit evidence of Mr. Cadwallader's 1985 conviction on remand." *Cadwallader,* 155 Wn.2d at 883 (Bridge, J., dissenting). In neither case did the opinions identify a specific constitutional basis in analyzing the issues.

---

discussed the 2008 amendments in a different context, we never addressed the remand provision at issue here. We disapprove of *Mendoza* to the extent that it could be read as reaffirming the "no second chance" rule as supplanting the remand provision.

Justice Bridge's remarks would prove prophetic. In 2008, the legislature amended several sections of the SRA, including RCW 9.94A.530. Its intent was clear:

> Given the decisions in *In re Cadwallader*, 155 Wn.2d 867 (2005); *State v. Lopez*, 147 Wn.2d 515 (2002); *State v. Ford*, 137 Wn.2d 472 (1999); and *State v. McCorkle*, 137 Wn.2d 490[, 973 P.2d 461] (1999), the legislature finds it is necessary to amend the provisions in RCW 9.94A.500, 9.94A.525, and 9.94A.530 in order to ensure that sentences imposed accurately reflect the offender's actual, complete criminal history, whether imposed at sentencing or upon resentencing.

LAWS OF 2008, ch. 231, § 1.

In relevant part, RCW 9.94A.530(2) was amended to read, "On remand for resentencing following appeal or collateral attack, the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented." LAWS OF 2008, ch. 231, § 4.

The amended statute provided for three provisions relevant here. First, RCW 9.94A.500(1) provided in part that "[a] criminal history summary relating to the defendant from the prosecuting authority or from a state, federal, or foreign governmental agency shall be prima facie evidence of the existence and validity of the convictions listed therein." Second, RCW 9.94A.530(2) makes the defendant's

8

failure to object to a criminal history summary an acknowledgement.[4] Third, and at issue in this case, RCW 9.94A.530(2) also permits the parties to present "all relevant evidence regarding criminal history, including criminal history not previously presented."

We addressed these revisions and invalidated two provisions of the 2008 amendments because they undermined the very constitutional principles of due process that were at issue in *Ford*. In *Hunley*, the State presented an unsworn statement from the prosecuting attorney summarizing Hunley's criminal history, to which the defendant did not object. On the basis of this summary, the trial court calculated Hunley's offender score. We began our analysis by reaffirming the fundamental holding of *Ford* that the State bears the burden of proving prior convictions at sentencing by a preponderance of the evidence. *Hunley*, 175 Wn.2d at 909-10 (citing *Ford*, 137 Wn.2d at 479-80). We held that two provisions of the 2008 amendments to the SRA impermissibly shifted or relieved the burden of proof from the State and concluded that those provisions were unconstitutional. Specifically, we found that RCW 9.94.500(1) that permits a criminal history

---

[4] "In determining any sentence other than a sentence above the standard range, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing, or proven pursuant to RCW 9.94A.537. Acknowledgment includes not objecting to information stated in the presentence reports and not objecting to criminal history presented at the time of sentencing."

summary to constitute prima facie evidence of the existence and validity of prior convictions, was unconstitutional as applied. Because "criminal history summary" is not defined in the statute, we recognized that there could be a set of circumstances in which this provision could be constitutionally applied. *Hunley*, 175 Wn.2d at 916-17. However, we held that the provision in RCW 9.94A.530(2) that permits the defendant's failure to object to a criminal history summary to be considered an acknowledgement was unconstitutional on its face because it impermissibly relieved the State of its burden. *Hunley*, 175 Wn.2d at 917. We did not address the remand provision at issue here.

Although *Ford* controlled our decision in *Hunley* to invalidate two sections of the 2008 amendments to the SRA because those provisions implicated due process, *Ford* does not control our resolution of this case. The provisions we invalidated in *Hunley* are distinguishable. We invalidated those provisions because they relieved, shifted, or removed the State's burden, implicating due process principles that established that the State must prove a defendant's prior convictions by the preponderance of the evidence. To meet its burden, the State must produce evidence: it cannot rely on presumptions or the defendant's silence. But due process does not prohibit the State from presenting additional evidence in order to meet its burden if its prior evidence fails. Thus, the remand provision at issue here

does not implicate due process or affect the State's burden to produce evidence. Rather, the legislature has provided that both parties have the opportunity at any sentencing hearing to present evidence "in order to ensure that sentences imposed accurately reflect the offender's actual, complete criminal history, whether imposed at sentencing or upon resentencing." LAWS OF 2008, ch. 231, § 1.

The holding in *Ford* was the product of judicial economy and fairness, meant to balance competing interests of accuracy and efficiency. In most cases, there is little difficulty for the State to prepare an accurate criminal history for the sentencing court and it presumably has that history in mind when it makes the charging decision. The "no second chance" rule was meant to encourage the State to be fully prepared at the original sentencing in order to avoid costly appeals and resentencing hearings. Although sentencing courts retain the authority to reject the State's proof of a defendant's criminal history, in those cases where relief is ordered in an appellate proceeding and the case remanded, such as occurred here, under the statutory remand provision both parties have the opportunity to present any evidence relevant to ensure the accuracy of the criminal history. Because ensuring the accuracy of the criminal history does not implicate due process, the legislature acted consistent with its plenary authority over sentencing in enacting the statutory remand provision.

11

CONCLUSION

We hold that the statutory remand provision in RCW 9.94A.530(2) controls

the question whether the parties may present additional evidence on remand. We

reverse and remand for resentencing consistent with this opinion.

WE CONCUR: