# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47028-4-II |
| Respondent, | |
| v. | |
| KARENA K. EIDSMOE, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. – Karena K. Eidsmoe appeals her jury trial convictions for one count of second degree burglary and one count of resisting arrest, and she appeals her sentence based on the State's failure to prove her criminal history by a preponderance of evidence. She also appeals the discretionary legal financial obligations (LFOs) the trial court imposed. We hold that Eidsmoe does not establish ineffective assistance of counsel based on defense counsel's failure to object to the admission of two exhibits as business records[1] and that the State proved Eidsmoe's criminal history by a preponderance of the evidence. Thus, we confirm the convictions and sentence. But, because the record shows that the trial court failed to comply with its obligation under RCW 10.01.160(3) and *State v. Blazina*,[2] to make an individualized inquiry into Eidsmoe's current and future ability to pay before imposing the discretionary LFO's, we remand to the trial court for reconsideration of the discretionary LFOs consistent with RCW 10.01.160(3) and *Blazina*.

---

[1] RCW 5.45.020.

[2] 182 Wn.2d 827, 838-39, 344 P.3d 680 (2015).

FACTS

## I. Background

On December 5, 2013, Eidsmoe and her husband Robert Alvin Nagal entered a Wal-Mart store. Eidsmoe had been barred from entering Wal-Mart property since November 2009.

As Eidsmoe and Nagal shopped, Wal-Mart loss prevention officers and Shelton Police Officer Robert Auderer watched Eidsmoe place some batteries in her purse and a greeting card under the shopping cart's child seat. Eidsmoe and Nagal did not pay for the batteries or the card when they paid for the other items in their cart. After Eidsmoe and Nagal had finished checking out at the register, Auderer also observed Eidsmoe take a "piece of merchandise" and conceal it in the cart. Report of Proceedings (RP) at 25.

When Eidsmoe and Nagal attempted to leave the store, Auderer detained them. During the arrest, Eidsmoe struggled with Auderer. Eidsmoe admitted to the officer that she had taken some batteries and "other items." RP at 30. After her arrest, store personnel located a copy of the trespass order.

## II. Procedure

The State charged Eidsmoe with second degree burglary and resisting arrest. The case proceeded to a jury trial.

### A. Trial Testimony

The State's witnesses testified as described above, and the jury viewed a video tape showing Eidsmoe and Nagal's activities while in the store. In addition, Amy Pagel, a Wal-Mart loss prevention agent, testified for the State.

The State introduced exhibit 2, a copy of the trespass order that Pagel had located after Eidsmoe was detained, and exhibit 4, a photograph of Eidsmoe that was related to the trespass order.[3] Defense counsel stated that he had "no basis to object" to these exhibits, and the trial court admitted them. RP at 46.

Nagal was the sole defense witness. He testified that he was the one who had placed the batteries in Eidsmoe's purse and hid the card and that he had asked the checker to ring up the "glow pillow pet thing" Eidsmoe took on her way out of the store. RP at 78.

The jury found Eidsmoe guilty of second degree burglary and resisting arrest. The case proceeded to sentencing.

B. SENTENCING

At sentencing, Eidsmoe requested a Family Offender Sentencing Alternative (FOSA) or a prison based Drug Offender Sentencing Alternative (DOSA). The State opposed her request and recommended a standard range sentence based on her prior criminal history. It asserted that Eidsmoe's offender score for the second degree burglary and resisting arrest convictions was seven points.[4] The State gave an oral history of Eidsmoe's prior criminal history, but it did not provide certified copies of the judgments and sentences or corroborate its oral summary with proof. At no point did Eidsmoe acknowledge or object to the State's offender score calculation of seven points.

In support of her request for a FOSA or DOSA based sentence, Eidsmoe submitted two risk assessment reports prepared by different community corrections officers (CCOs) from the

---

[3] When introducing these documents, the State referred to them as "business record[s]." RP at 45.

[4] The prior residential burglary counted as two points. RCW 9.94A.525(16). The resisting arrest was a misdemeanor offense, so there was no offender score for that offense. RCW 9A.76.040(2).

Department of Corrections (DOC). The CCOs stated that they were familiar with Eidsmoe's criminal history based on their investigation into whether a FOSA or DOSA sentence was appropriate to recommend to the sentencing court.

The FOSA report stated that Eidsmoe's criminal history included the following felony convictions: (1) a King County forgery charged in 1992, (2) a King County second degree possession of stolen property charged in 1998, (3) a King County forgery charged in 1998, (4) a Jefferson County second degree theft charged in 1998, (5) a Kitsap County Residential burglary charged in 2002, and (6) a Mason County possession of a controlled substance with intent to deliver charged in 2007. The FOSA report noted that the CCO had obtained Eidsmoe's criminal history from the National Crime Information Center (NCIC), the Washington Crime Information Center (WACIC), the Superior Court Operations and Management Information System (SCOMIS), and the District Court Information System (DCIS). The CCO signed the report under penalty of perjury and declared that the content of the report was true and correct to the best of her knowledge and belief based on the available information.

The DOSA report contained the same information about Eidsmoe's criminal history and also was signed by the reporting CCO under penalty of perjury, but it did not state what sources the criminal history came from. Eidsmoe did not expressly acknowledge the information in these reports or object to the criminal history summaries.

The trial court read and considered both reports, denied Eidsmoe's request for a FOSA or DOSA sentence, and imposed standard range sentences for the second degree burglary and resisting arrest convictions. The trial court found that Eidsmoe's offender score was seven points. The trial court based her offender score on the same six offenses described in the FOSA and DOSA

reports. Without any inquiry into Eidsmoe's current and future ability to pay LFOs, the trial court imposed $3,578.98 in mandatory and discretionary LFOs.[5] Eidsmoe did not object to the imposition of LFOs. The judgment and sentence contains boilerplate language stating the court considered total amount owing and the defendant's present and future ability to pay, but the trial court made no specific findings.

Eidsmoe appeals her convictions, the second degree burglary sentence, and the discretionary LFOs.

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE OF COUNSEL

Eidsmoe argues that her trial counsel's failure to object to the admission of the trespass order (exhibit 2) and her photograph (exhibit 4) as business records was ineffective assistance of counsel. We disagree.

To establish ineffective assistance, Eidsmoe must show that defense counsel's performance was deficient and that this deficiency was prejudicial. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2015) (citing *Strickland v. Wash.*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Counsel's performance is deficient if it falls below an objective standard of reasonableness and cannot be characterized as legitimate trial strategy or tactics. *State v. Kyllo*, 166 Wn.2d 856, 862-63, 215 P.3d 177 (2009). To establish prejudice, Eidsmoe must show that

---

[5] The trial court imposed the following LFOs: (1) $500.00 victim assessment, (2) $200.00 criminal filing fee, (3) $64.48 witness costs, (4) $1,014.50 sheriff service fees, (5) $250.00 jury demand fee, (6) $600.00 fees for court appointed attorney, (7) $850.00 for court appointed defense expert and other defense costs, and (8) $100.00 DNA collection fee. The witness costs, sheriff service fee, jury demand fee, fees for court appointed attorney, and fees for court appointed defense expert and other defense costs are discretionary LFOs.

there is a reasonable probability the trial's result would have differed had the deficient performance not occurred. *Grier*, 171 Wn.2d at 34. A failure to satisfy either prong is fatal to a claim of ineffective assistance of counsel. *State v. McLean*, 178 Wn. App. 236, 246, 313 P.3d 1181 (2013), *review denied*, 179 Wn.2d 1026 (2014).

Eidsmoe argues that the existing record establishes that the State would have been unable to show that these exhibits were business records. But Eidsmoe is relying solely on the lack of evidence in the existing record—which did not contain evidence related to the business record exception, likely because Eidsmoe did not object on this ground. Although the record is devoid of evidence about the business record issue, it is pure speculation that the State would not have been able to establish the business records exception had Eidsmoe made this objection. Thus, Eidsmoe does not establish deficient performance or prejudice, and this argument fails.

## II. CRIMINAL HISTORY

Eidsmoe next argues that the State failed to prove her criminal history by a preponderance of the evidence. Again, we disagree.

To establish a defendant's criminal history for sentencing purposes, the State must prove a defendant's prior convictions by a preponderance of the evidence. RCW 9.94A.500(1); *State v. Hunley*, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). The preponderance of the evidence "standard is 'not overly difficult to meet,' the State must at least introduce 'evidence of some kind to support the alleged criminal history,'" and this evidence must "bear[ ] some 'minimum indicia of reliability.'" *Hunley*, 175 Wn.2d at 910 (quoting *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)); *In re Pers. Restraint of Adolph*, 170 Wn.2d 556, 568, 243 P.3d 540 (2010) (quoting *Ford*, 137 Wn.2d at 480-81). The best method of proving a prior conviction is a certified copy of

6

the judgment, but the State also may produce other comparable documents or transcripts from prior hearings to prove prior convictions.[6]  *Hunley*, 175 Wn.2d at 910.  "Bare assertions, unsupported by evidence do not[, however,] satisfy the State's burden to prove the existence of a prior conviction."  *Hunley*, 175 Wn.2d at 910.

Relying on *Hunley*, Eidsmoe asserts that the State's recitation of her criminal history and the risk assessment reports from the DOC are not sufficient proof of her prior convictions.  *Hunley* holds that the State's recitation of prior history is not proof of that history because such recitations are not evidence, but it does not establish that the DOC's reports cannot establish the prior convictions.  *Hunley*, 175 Wn.2d at 916-17.

In *Hunley*, the State presented an unsworn and unsupported document summarizing its understanding of the defendant's criminal history, to which the defendant did not object.  *Hunley*, 175 Wn.2d at 905.  Our Supreme Court held the State's unsworn and unsupported criminal history summary was insufficient to prove the prior offenses because "'a prosecutor's assertions are

---

[6] In addition, the State can also meet its burden if the defendant affirmatively acknowledges the criminal history on the record.  *State v. Mendoza*, 165 Wn.2d 913, 929, 205 P.3d 113 (2009), *disapproved of on other grounds by State v. Jones*, 182 Wn.2d 1, 338 P.3d 278 (2014).  But "[t]he mere failure to object to a prosecutor's assertions of criminal history does not constitute such an acknowledgement."  *Mendoza*, 165 Wn.2d at 928.  The State does not assert that Eidsmoe's failure to object to the risk assessment reports or the trial court's offender score was an acknowledgement.

neither fact nor evidence, but merely argument.'"[7] *Hunley*, 175 Wn.2d at 912 (quoting *Ford*, 137 Wn.2d at 483 n.3). Here, however, the proof of the prior convictions was not just the State's unsworn and unsupported statement of Eidsmoe's prior convictions. The trial court considered two sworn statements created by the DOC in the risk assessment reports, one of which stated the sources of the information upon which the criminal history summary was based. Although it is certainly better practice to also submit the information actually supplied by the sources (NCIC, WACIC, SCOMIS, and DCIS), we hold that the sworn reports from neutral agencies, such as the DOC,[8] containing summaries of a defendant's prior criminal history based on well-known information sources were sufficiently reliable to establish Eidsmoe's prior criminal history by a preponderance of the evidence. Accordingly, this argument fails.

## III. LFOs

Finally, Eidsmoe argues that the trial court erred in imposing discretionary LFOs without making an individualized determination of Eidsmoe's current and future ability to pay. Generally, we may decline to review issues raised for the first time on appeal. RAP 2.5(a). But, as our

---

[7] The Court also held that RCW 9.94A.500(1), which permits a criminal history summary to constitute prima facie evidence of the existence and validity of prior convictions, was unconstitutional *as applied* to Hunley's case. The Court held this because it had previously held in *Ford* that a defendant's failure to object to the State's unsupported assertion of criminal history is not an acknowledgement and treating it as an acknowledgement unconstitutionally shifted the burden of proof to the defendant. *Hunley*, 175 Wn.2d at 914. There is no acknowledgement issue in this case, so this part of *Hunley* does not apply here.

[8] *See State v. Harris*, 102 Wn. App. 275, 287, 6 P.3d 1218 (2000) ("The [community corrections officer] preparing the presentence investigation report is a neutral and independent participant in the sentencing process; he or she acts not as an agent of the State of Washington but on behalf of the independent judiciary."), *affirmed sub nom State v. Sanchez*, 146 Wn.2d 339, 46 P.3d 774 (2002).

Supreme Court in *Blazina* noted, an appellate court may exercise its discretion to reach unpreserved claims of error. *Blazina*, 182 Wn.2d 827, 832-33, 344 P.3d 680 (2015). We choose to exercise our discretion to examine this issue.[9]

RCW 10.01.160(3) provides:

The court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that the payment of costs will impose.

Although the record of Eidsmoe's exact financial circumstance is sparse, the record suggests that (1) both she and her husband received social security due to medical disabilities, (2) she currently has chronic health issues that require medication, (3) she may have a chemical dependency, (4) she may have mental health issues, (5) she attended school through grade nine but later earned her General Equivalency Diploma, and (6) she had previously worked in housekeeping and laundry at a local hotel, as a cook, and in the fast food industry, but her last employment was in 1999 or 2000. The sentencing hearing also disclosed that Eidsmoe had several prior felony convictions.

But despite information in the record suggesting that Eidsmoe did not have the current ability to pay her LFO obligations and that her incarceration, her criminal record, and her health issues or disability could potentially prevent her from holding employment following her release from custody, the trial court never inquired into Eidsmoe's ability to pay before imposing the discretionary LFOs. Thus, the record shows that the trial court failed to make an individualized

---

[9] Following our Supreme Court's opinion in *State v. Marks*, 2016 WL 743944, we will determine whether to exercise our discretion to reach the LFO issue on a case by case basis. And we decline to follow our prior approach in *State v. Lyle*, 188 Wn. App. 848, 355 P.3d 327 (2015), *petition for review granted in part*, __ Wn.2d ___, 365 P.3d 1263 (2016), and remanded back to the trial court in light of *Blazina*, 182 Wn.2d 827.

No. 47028-4-II

inquiry into Eidsmoe's current and future ability to pay LFOs as required under RCW 10.01.160(3) and *Blazina*, 182 Wn.2d at 838-39.

CONCLUSION

We hold that Eidsmoe does not establish ineffective assistance of counsel based on defense counsel's failure to object to the admission of exhibits 2 and 4 as business records and that the State proved Eidsmoe's criminal history by a preponderance of the evidence. Thus, we affirm Eidsmoe's convictions and sentence. But, we remand to the trial court for reconsideration of the discretionary LFOs consistent with RCW 10.01.160(3) and *Blazina*.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, C.J.

MAXA, J.

10