

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36634-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN TOLBERT HOBBS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — John Hobbs was charged with felony violation of a no-contact order after being seen in the protected person's apartment. He remained in custody pending trial. After three defense attorneys and multiple continuances, Mr. Hobbs's trial commenced 314 days after he was arrested. A jury found him guilty, and a judge sentenced him to 60 months in custody. Mr. Hobbs appeals, arguing that the trial court violated his constitutional and rule-based speedy trial rights. We affirm his conviction but remand for resentencing.

FACTS

Mr. Hobbs was arrested on February 27, 2018, and charged with felony violation of a no-contact order.[1]  After numerous continuances, many at defense counsel's request, and over Mr. Hobbs's personal objection, trial commenced 314 days after his arrest.

The requests for delay began almost immediately.  Defense counsel was granted a stay of proceedings after concerns arose about Mr. Hobbs's competency when he was placed on suicide watch in a padded jail cell and refused to be transported to court. Defense counsel filed a petition for competency, and a status hearing was set for March 14.  At this status hearing, the court granted defense counsel's motion for a continuance to March 28 so that she could secure an independent competency evaluation.

On March 28, defense counsel withdrew her petition for competency, and Mr. Hobbs was arraigned.  The court calculated the 60-day speedy trial period as ending on May 29, 2018, and set an omnibus hearing for April 26, and trial on May 7.  The court overruled Mr. Hobbs's objection to the trial date as untimely.

On May 4, the court granted defense counsel's request for a one-week continuance because she was exploring settlement options with Mr. Hobbs.  Trial was reset to May 14.

---

[1] Since the underlying allegations are not material to the issues, they are not included.  Instead, we will focus on the procedure after arrest.

On May 8, defense counsel advised the court that Mr. Hobbs had rejected settlement offers and wanted to take his case to trial. Counsel voiced her concern about Mr. Hobbs's rationality and requested another competency evaluation. After questioning Mr. Hobbs, the trial court found him to be competent and declined to order another evaluation. At this point, defense counsel requested a continuance of the trial to May 21, indicating that both herself and the prosecutor had anticipated a settlement and needed time to prepare for trial. The court granted the motion to continue the trial. On May 14, Mr. Hobbs, acting on his own behalf, filed a written objection to the May 21 trial date.

On May 18, three days before trial, defense counsel filed a motion to dismiss, alleging that the State had failed to turn over *Brady*[2] materials. The State requested a continuance of the trial so it could respond to the motion. Defense counsel objected, noting that she had given notice to the State about the issue, and that it should not come as a surprise that warranted continuing the trial. The court granted the State's motion and continued the trial to June 11.

On June 8, the parties were present for a triage hearing. Counsel indicated that the motion to dismiss had been denied. While Mr. Hobbs continued to object to any continuance, his attorney advised the court that two of the State's witnesses were unavailable and she needed more time to investigate possible defense witnesses. The court noted Mr. Hobbs's objection and continued the trial to July 16.

---

[2] *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

On July 13, defense counsel asked for another continuance, indicating that she was working on a global resolution at Mr. Hobbs's request and needed time to line up an expert witness in the event that the case was not resolved. Counsel acknowledged that Mr. Hobbs was continuing to object, "but I think he also knows that a global resolution would be more likely to result in less time than going to trial and losing and getting a sentence imposed that isn't by agreement." Report of Proceedings (RP) (July 13, 2018) at 17-18. In addition, counsel noted that the short continuance she was requesting was within the 30-day buffer created when the trial was continued to July 16. The court granted the motion and continued the trial to August 6.

At the "triage" hearing on August 3, Mr. Hobbs refused to be transported to court. His attorney asked for a one-week continuance to go over a new offer with Mr. Hobbs. Trial was reset to August 13. The attorneys and the court considered this trial date to be within the 30-day buffer created by the continuance to July 16.

At the triage hearing on August 10, defense counsel requested another continuance of the trial to September 7. Counsel indicated that Mr. Hobbs had raised concerns that morning about her representation of Mr. Hobbs when the no-contact order was initially entered, and there may be a conflict of interest if she were needed as a witness in the current case.

The trial court discussed this issue thoroughly with Mr. Hobbs, advising him that if his attorney could be a witness, she would need to withdraw, and a new attorney would

need to be appointed. Appointing new counsel would result in resetting the speedy trial

period and another delay. Mr. Hobbs begrudgingly agreed that his attorney should

withdraw. The State did not object to the continuance but made it clear on the record that

withdrawal of counsel would reset the 60-day speedy trial clock under CrR 3.3(c)(2)(vii).

The court reset trial to September 7 and ordered new counsel for Mr. Hobbs.

At a status hearing on August 24, Mr. Hobbs's second attorney advised the court

that he too had a conflict and needed to withdraw. This second attorney noted Mr.

Hobbs's ongoing speedy trial objection but acknowledged that disqualification of counsel

would reset the speedy trial period. Counsel asked the court to set a status hearing in one

week to see if they could get an attorney assigned to Mr. Hobbs. The Court set a status

hearing for August 31 and noted that it would not change Mr. Hobbs's trial set for

September 10.[3]

---

[3] On August 10, a scheduling order set Mr. Hobbs's trial for September 7. At the
next hearing, on August 24, when the second attorney withdrew, the court noted that trial
was set for September 10. It is not clear from the record how trial was moved from
September 7 to September 10. It is possible, that the court mistook the trial date.
Regardless, on August 24, the court recognized that the 60-day speedy trial period was
reset, and entered a scheduling order setting trial on September 10.

On September 7, Mr. Hobbs appeared in court with his third attorney. Trial was already set for September 10, but Mr. Hobbs's new attorney requested a continuance of the trial date, indicating that he was new and did not have a file yet. Mr. Hobbs objected. The court found that a continuance was necessary in the interest of justice, Mr. Hobbs would not be prejudiced, granted defense counsel's motion, and continuing trial to December 17.[4]

A triage hearing was held on December 14, Mr. Hobbs was not present, and there is nothing in the record to indicate why he was not transported. Defense counsel explained to the court, "[s]o, what we need to do is reset it for trial and it was supposed to be on the docket this morning for triage; but it wasn't. So, within the thirty-day period we're trying to reset it and we're looking at Wednesday, January 2 [2019] for trial date." RP (December 14, 2018) at 5. It is not clear from the record why the trial date of December 17 needed to be moved. Nevertheless, a scheduling order was entered, without Mr. Hobbs's signature, moving trial to January 2, 2019.

---

[4] At the omnibus hearing on November 28, the State requested a continuance to mid-February, indicating that the case had been reassigned to a different prosecutor. Although the record does not contain a written order, at the triage hearing on December 14, counsel noted that the State's motion for a continuance had been denied.

6

At the triage hearing on December 28, the State advised the court that defense counsel was ill and would not be well enough for trial on January 2. The State indicated that the outside speedy trial date was January 16, based on the 30-day buffer added to the December 17 continuance, and asked the court to reset trial to January 7. Mr. Hobbs was present and continued to object to any continuance of his trial.

Trial commenced on January 7, 2019, 314 days after Mr. Hobbs was arrested. The State called four witnesses, and defense did not call any. The trial, including jury selection and deliberations, lasted three days. The jury found Mr. Hobbs guilty of felony violation of a no-contact order.

## ANALYSIS

1. Did the trial court violate Mr. Hobbs's speedy trial rights under CrR 3.3?

Under Washington's speedy trial rules, an individual held in custody pending trial must be brought to trial within 60 days of arraignment. CrR 3.3(b)(1). The rule provides for tolling and resetting of the speedy trial period in certain circumstances. Whether the time limits set forth in the rule are violated, is a question reviewed de novo. *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009). If the court finds a violation of the rule's time limits, the charges must be dismissed with prejudice. CrR 3.3(h).

On appeal, Mr. Hobbs makes several arguments concerning his speedy trial rights under the rule. First, he argues that the rule's time limits were violated when trial was set on December 17 and then again when it was continued to January 7. In the alternative,

he argues that the court abused its discretion in granting the continuance to December 17 and finding that a lengthy delay was necessary.

A. Time Limit Violations

Initially, Mr. Hobbs argues that the time limits within the rule were violated when the court set a trial for December 17. To support this argument, Mr. Hobbs points out that the rule requires a court to set trial within the speedy trial period after the commencement date is reset by a defense attorney's disqualification. CrR 3.3(d)(2). From this proposition, he contends that the trial date of December 17 was well outside of his recommended 60-day speedy trial period, which ended on October 23. If the December 17 trial date was an initial resetting, Mr. Hobbs would be correct. But the record does not support his argument. On August 24, when Mr. Hobbs's second attorney notified the court that he, too, would need to withdraw, the trial court recognized that the speedy period would be reset under CrR 3.3(c)(2)(vii). The court then signed a scheduling order setting a status hearing for August 31, and trial on September 10, 2018. Clerk's Papers (CP) at 95. This trial date was within the 60-day speedy trial period that commenced on August 24, and ended on October 23. Thus, on September 7, when the court moved the trial date to December 17, it was a continuance under CrR 3.3(f)(2), not an initial setting after recommencement.

In his brief, Mr. Hobbs does not acknowledge the September 10 trial date. This is fatal to his argument. The rule does not *require* a judge to set a new trial date because the commencement date has been reset. Indeed, in this case, there was already a trial date set within the recommenced 60-day speed trial period. Instead, the rule makes clear that if trial is reset, for any reason, then it is the court's responsibility to make sure the new trial date is within the time limits, and the court's responsibility to notify each counsel or party of the new date. CrR 3.3(d)(2).[5] These are the court's responsibilities every time a new trial date is set. *See State v. Carney*, 129 Wn. App. 742, 748, 119 P.3d 922 (2005).

Mr. Hobbs also argues that the rule's time limits were violated when the court continued his trial from December 17 to January 7. However, this argument is based on the incorrect premise that the December 17 date was an initial setting and not a continuance. As set forth above, the December 17 trial was a continuance granted under CrR 3.3(f)(2), not an initial setting. As a valid continuance, the 30-day buffer in CrR 3.3(b)(5) applied, and Mr. Hobbs's speedy trial period was extended to January 16. His trial on January 7 was within the time limits of the rule.

---

[5] "*Resetting of Trial Date. When the court determines that the trial date should be reset for any reason*, including but not limited to the applicability of a new commencement date pursuant to subsection (c)(2) or a period of exclusion pursuant to section (e), the court shall set a new date for trial which is within the time limits prescribed and notify each counsel or party of the date set." CrR 3.3(d)(2) (emphasis added).

9

B. Discretionary Continuance

Next, Mr. Hobbs suggests that even if the continuance to December 17 was not a violation of the time limits, the court nonetheless abused its discretion in granting the continuance. A court's decision to grant a continuance is reviewed for abuse of discretion. *State v. Ollivier*, 178 Wn.2d 813, 822, 312 P.3d 1 (2013). "[G]ranting defense counsel's request for more time to prepare for trial, even 'over defendant's objection, to ensure effective representation and a fair trial,' is not necessarily an abuse of discretion." *State v. Saunders*, 153 Wn. App. 209, 217, 220 P.3d 1238 (2009) (quoting *State v. Campbell*, 103 Wn.2d 1, 15, 691 P.2d 929 (1984)).

In this case, it was not an abuse of discretion for the court to continue the trial set on September 10, when defense counsel was new and did not have a file three days before trial. The rule provides that a court may continue a trial upon motion of a party when required in the administration of justice if the defendant is not prejudiced. CrR 3.3(f)(2). The court must state on the record or in writing the reasons for the continuance. *Id.* A continuance granted under this provision tolls speedy trial from the date of the original trial to the new trial date. CrR 3.3(e)(3). Here, the trial court found that the continuance would not prejudice Mr. Hobbs and was necessary in the interest of justice to give new counsel needed time "to receive the file and come up to speed on the case." CP at 96.

Mr. Hobbs also challenges the length of the continuance, arguing that the court abused its discretion by granting a continuance for 101 days. The requested continuance, and its length of delay, were both requested by Mr. Hobbs's new attorney for the purpose of trial preparation. As such, Mr. Hobbs has waived any objection to the continuance. CrR 3.3(f)(2).

Despite the waiver, Mr. Hobbs argues that the trial court abused its discretion by failing to set forth "convincing and valid reasons" for the lengthy continuance, citing *Saunders*, 153 Wn. App. at 221. The holding in *Saunders* is very limited and does not apply to the circumstances in this case. In *Saunders*, the State and defense counsel requested a continuance to "continue negotiations" despite the defendant's stated desire to go to trial. Several subsequent continuances were also granted without an adequate basis articulated by either party or the court. The Court of Appeals found an abuse of discretion because the choice to negotiate or go to trial is within the defendant's control, and the subsequent continuances were granted "[a]bsent convincing and valid reasons." *Id*. at 221.

In this case, the trial court made specific findings that the continuance was necessary for the interests of justice and did not prejudice Mr. Hobbs. Specifically, Mr. Hobbs's new attorney needed time to prepare for trial. Such a request is within the purview of defense counsel. *See Ollivier*, 178 Wn.2d at 825. While a shorter

continuance may have been more prudent, the length of delay in this case was not manifestly unreasonable.

2. Did the trial court violate Mr. Hobbs's constitutional right to a speedy trial?

Next, Mr. Hobbs challenges the 314-day delay in bringing him to trial as a violation of his constitutional right to a speedy trial. The Sixth Amendment to the United States Constitution, as well as art. I, section 22 of the Washington State Constitution, both protect a criminal defendant's right to a speedy trial. The protections provided by each provision are substantially the same, and a constitutional challenge is reviewed de novo. *Ollivier*, 178 Wn.2d at 826.

A constitutional speedy trial challenge is separate from a rule violation. While the rule has the purpose of ensuring that a defendant's constitutional right to a speedy trial is effectuated, complying with it does not necessarily mean that no constitutional violation occurs. *Id.* at 823 (citing *Kenyon*, 167 Wn.2d at 136).

Unlike the court rule, the constitutional right is not quantified. *Id.* at 827. To determine whether a violation of constitutional speedy trial rights occurred, a court must apply a balancing test by examining both the State and the defendant's conduct and culpability. *Barker v. Wingo*, 407 U.S. 514, 529-30, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). However, in order to trigger the *Barker* analysis, the defendant must first demonstrate that the "interval between accusation and trial has crossed the threshold

dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States*, 505 U.S. 647, 651-52, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992).

In determining whether the length of delay crosses the line from ordinary to presumptively prejudicial, reviewing courts should consider the complexity of the case, the length of the delay, and the reliance on eyewitness testimony. *State v. Iniguez*, 167 Wn.2d 273, 292, 217 P.3d 768 (2009). Once the defendant demonstrates the delay is presumptively prejudicial, the reviewing court must apply the *Barker* balancing test by examining (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. Thus, the length of the delay is both a triggering factor and a balancing factor.

In this case, approximately ten months (314 days) passed between the arrest and the beginning of the trial. Therefore, Mr. Hobbs's pretrial delay is presumptively prejudicial and meets that threshold showing. *Iniguez*, 167 Wn.2d at 290. Consequently, the remainder of the *Barker* factors must be considered.

(1) <u>Length of delay</u>. This factor focuses on "'the extent to which the delay stretches beyond the bare minimum needed to trigger'" the four-step analysis. *Iniguez*, 167 Wn.2d at 293 (*quoting Doggett*, 505 U.S. at 652). A longer pretrial delay compels a court to give a closer examination into the circumstances surrounding the delay. *Id*. Here, the ten-month lapse between arrest and trial is just beyond the bare minimum needed to trigger the *Barker* inquiry (8 months to 12 months).

13

(2) Reason for delay. This factor requires the court to examine each party's responsibility for the delay and weigh the respective reasons. *Iniguez*, 167 Wn.2d at 294. In this case, defense counsel requested nearly all the continuances. First, defense counsel sought a continuance for time to assess Mr. Hobbs's competency. Then, defense counsel requested continuances to pursue additional investigations. Finally, several continuances were necessary after the disqualification of two consecutive defense counsel. Again, it is understandable that Mr. Hobbs was frustrated by the multiple delays. However, case law clearly states that delay caused by defense counsel is chargeable to the defendant, even if the delay is over the objection of the defendant. *Ollivier*, 178 Wn.2d at 832; *Campbell*, 103 Wn.2d at 15.

In both the initial brief and the reply brief, Mr. Hobbs argues that the State caused undue delay by failing to respond to *Brady* discovery requests timely or adequately. However, the record indicates that the court ultimately held that the State had complied with its *Brady* disclosure requirements. CP at 81-89. Mr. Hobbs does not assign error to this conclusion. Because the court found no *Brady* violation, Mr. Hobbs cannot demonstrate that the State deliberately caused unnecessary delay by requesting a continuance to respond and brief the *Brady* issue. Overall, the reasons for the delay weigh against Mr. Hobbs.

(3) Assertion of right. This factor requires the court to consider the extent to which the defendant asserted his speedy trial right. *Iniguez*, 167 Wn.2d at 294-95. Mr.

Hobbs objected to each continuance.  Thus, this factor weighs slightly in favor of Mr. Hobbs.

(4) <u>Prejudice</u>.  The fourth factor considers what prejudice the defendant suffered because of the delay.  "Prejudice is judged by looking at the effect on the interests protected by the right to a speedy trial: (1) to prevent harsh pretrial incarceration, (2) to minimize the defendant's anxiety and worry, and (3) to limit impairment to the defense." *Iniguez*, 167 Wn.2d at 295.

Here, there is no showing, other than conclusory statements, that the delay caused prejudice to Mr. Hobbs.  Additionally, Mr. Hobbs fails to identify with any particularity evidence that the delay impeded his defense (such as memories of critical witnesses fading or evidence becoming unavailable).  *Barker*, 407 U.S. 514.  The evidence of guilt here, both direct and circumstantial, was overwhelming.  Accordingly, this factor weighs against Mr. Hobbs.

Balancing each of the above factors, the delay under the totality of the circumstances was not a speedy trial violation of constitutional magnitude.  *Iniguez*, 167 Wn.2d at 295.  Contrary to Mr. Hobbs's assertions, the delay was not unduly long, the reasons for the delay are primarily attributable to the defense, and Mr. Hobbs fails to demonstrate particularized prejudice.  Thus, Mr. Hobbs made an insufficient showing to tip the scales in his favor.  Accordingly, there was no violation of Mr. Hobbs's

constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution and article I, section 22.

3. Did the trial court err in calculating Mr. Hobbs's offender score for purposes of sentencing?

Mr. Hobbs challenges the trial court's calculation of his offender score for purposes of sentencing. Specifically, he argues that three Oregon convictions for burglary should not have been included in calculating his offender score because the State failed to prove the crimes were comparable Washington offenses. The State concedes error and acknowledges that the Oregon burglary statutes are broader than Washington's first-degree burglary statute.

At sentencing, the State bears the burden of proving by a preponderance of the evidence the existence and comparability of a defendant's prior out-of-state convictions. *State v. Collins*, 144 Wn. App. 547, 554, 182 P.3d 1016 (2008). The State is relieved of its burden only if the defendant "affirmative[ly] acknowledge[s]" the "facts and information" the State introduces regarding criminal history. *State v. Mendoza*, 165 Wn.2d 913, 928, 205 P.3d 113 (2009), *disapproved of on other grounds by State v. Jones*, 182 Wn.2d 1, 338 P.3d 278 (2014). The remedy when the State fails this burden is to remand for resentencing to allow both parties to present relevant evidence of criminal history under RCW 9.94A.530(2). *State v. Cobos*, 182 Wn.2d 12, 15-16, 338 P.3d 283 (2014); *Jones*, 182 Wn.2d at 10-11.

16

In this case, Mr. Hobbs indicated he was "unwilling to stipulate to any of the convictions . . . or any of the facts as presented by the State with regard to his criminal history." RP (Feb. 19, 2019) at 11. And, the State concedes that the trial court erred by finding the offenses comparable because it failed to conduct the required factual comparability analysis (considering only facts of the foreign convictions that were admitted, stipulated, or proved by the State beyond a reasonable doubt). The State properly asserts that the appropriate remedy is to remand for resentencing at which time it may present additional evidence to support a factual comparability determination.

4. Statement of Additional Grounds (SAG)

In his statement of additional grounds, Mr. Hobbs raises two additional issues. First, he contends that the "state's motion in limine the day of trial changed the scope of evidence in a prejudicial bias manner that ended with the outcome of my suffering from a malicious prosecution in violation of speedy trial court rule; where a nullification by jury is the right of the accused." SAG at 1. Mr. Hobbs does not identify the challenged motion in limine and does not analyze this issue or provide authority. We therefore decline to review this issue. RAP 10.3.

Second, Mr. Hobbs argues that the trial court improperly prevented the protected person from testifying at his trial. Mr. Hobbs contends that her testimony would have supported his defense, or in the alternative, supported jury nullification. There is nothing in the record to support Mr. Hobbs's argument that the trial judge kept a witness from

testifying. Nor is there a proffer as to what testimony this witness would provide. There is no indication in the record that Mr. Hobbs's attorney subpoenaed this witness or called her to testify. We decline to review this issue. RAP 10.3.

Affirm the conviction and remand for resentencing.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Siddoway, A.C.J.